MOBRIDGE COMMUNITY INDUS-
TRIES, INC., a South Dakota Corpora-
tion, Plaintiff and Respondent,

v.

TOURE, LTD., a foreign corporation,
Toure, a partnership, Anthony Spruck,
John Zwald, Ed Krohn, and Don Raby,
Defendants,

and

Dr. Douglas L. Cook and Doug Bisbee,
Defendants and Appellants.

No. 12384.

Supreme Court of South Dakota.

Argued Oct. 13, 1978.

Decided Dec. 28, 1978.

Newell E. Krause, of Lakeman & Krause, Mobridge, for plaintiff and respondent.

James Robbennolt, of Duncan, Olinger, Srstka, Maher & Lovald, Pierre, for defendants and appellants.

DUNN, Justice.

This case involves a breach of contract action brought by Mobridge Community Industries, Inc. (MCI), against Toure, Ltd. (Toure), an Illinois corporation, and its board of directors. The trial court ruled that MCI was entitled to recover the sum of $250,000 plus interest, advanced insurance premium, and costs from Toure and directors Cook, Bisbee, Spruck and Zwald, jointly and severally. Directors Cook and Bisbee appeal. We affirm the judgment.

The breach of contract centers around an agreement dated November 25, 1975, between MCI and Toure. The agreement provided for the sale to Toure of personal property and equipment located in a plastics plant in Mobridge, South Dakota, together with a lease and option to buy the plant building. The agreement required the payment of $250,000 in five equal annual installments, insurance on the property, and rental payments on the building. Toure further agreed that if any personal property or equipment were sold or removed from the plant building it would be replaced with personal property or equipment of equal value to retain the overall value of the plant.

At the time the agreement was executed, MCI was duly incorporated in the State of South Dakota and Toure was duly incorporated in the State of Illinois. Toure, however, had failed to register and qualify to do business as a foreign corporation in South Dakota prior to or subsequent to the execution of the agreement.

Toure failed to make the first annual installment of $50,000 for personal property and equipment in the plant. The entire property was not insured as required by the agreement. Toure also failed to make several rental payments to MCI. Over a period of time, various items of personal property and equipment were removed from the plant building and sold without replacement of items of equal value as agreed.

The fact that the agreement was breached is apparent from the record and is not in serious dispute. The real question is the

attachment of liability for the breach. The trial court found Toure and its directors Cook, Bisbee, Spruck and Zwald to be jointly and severally liable for the breach[1] on three basic theories as follows: (1) statutory liability under SDCL 47–2–59; (2) liability for negligent and wrongful acts resulting in piercing the corporate veil; and (3) the trust fund doctrine.

On our review of the appeal, the successful party is entitled to the benefit of his version of the evidence and of all inferences fairly deducible therefrom which are favorable to the judgment of the trial court. *Cunningham v. Yankton Clinic, P.A.,* 1978, S.D., 262 N.W.2d 508. The findings of the trial court upon conflicting evidence are presumed to be correct, and we will not set such findings aside unless they are clearly erroneous. SDCL 15–6–52(a). In applying the clearly erroneous standard of review, the question is not whether we would have made the same findings that the trial court did but whether, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. *Cunningham v. Yankton Clinic, P.A.,* supra.

With the proper standard of review in mind, we address the trial court finding of liability under SDCL 47–2–59 which reads as follows:

"All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

This statutory provision has been thoroughly analyzed in a well-reasoned opinion written by Federal District Judge Bogue in which he held that SDCL 47–2–59 does not require that the board of directors of a foreign corporation be held personally liable for the obligations of the corporation undertaken while doing business in South Dakota without a certificate of authority to do so. *Cargill, Inc. v. American Pork Producers, Inc.,* 1976, D.C.S.D., 415 F.Supp. 876. The terms "corporation" and "foreign corporation" are defined separately in SDCL 47–2–1 and and context of Title 47 does not require the first term to be read as including the second term.[2] SDCL 47–2–59 refers only to persons who purport to act as a corporation without incorporating and has the effect of negating the possibility of a de facto corporation. *Cargill, Inc. v. American Pork Producers, Inc.,* supra.

The trial court attempts to distinguish the *Cargill* case on the fact that American Pork Producers, Inc., was a bona fide Iowa corporation and remained a recognized foreign corporation, even though its certificate of authority to do business in South Dakota had been revoked for a period of time, whereas Toure never did exist or function as a bona fide foreign corporation and never sought a certificate of authority to do business in South Dakota. The record contains a letter from the Illinois secretary of state to MCI's counsel stating that Toure was duly incorporated in that state on May 29, 1974, and had designated its registered agent along with his address pursuant to statutory dictates. Since SDCL 47–2–59 applies only to persons acting as a corporation without incorporating and Toure was duly incorporated in Illinois during all times pertinent to the misrepresentations made in this case, the trial court finding that appellants were personally liable under SDCL 47–2–59 is clearly erroneous.

The second theory of liability relied upon by the trial court is that of pierc-

---

1. The trial court entered judgment against Toure, Spruck and Zwald by default and dismissed the case as to defendant Krohn pursuant to stipulation. The trial court found that the record did not support recovery against defendant Raby by virtue of his association with Toure. Raby, however, did leave his position as manager of the Mobridge plant and removed some equipment because Toure had failed to pay his wages. The trial court found that MCI would be entitled to judgment against Raby upon a proper showing of the value of the equipment taken.

2. This is true in part because SDCL 47–2–59 is in the chapter dealing with the formation of domestic corporations, and foreign corporations are treated separately in chapter 47–8.

ing the veil of the corporate entity. The general rule is that the corporation is looked upon as a separate legal entity until there is sufficient reason to the contrary. Such reason exists when retention of the corporate fiction would "produce injustices and inequitable consequences." *Hayes v. Sanitary & Improvement Dist. No. 194*, 1976, 196 Neb. 653, 244 N.W.2d 505, 511. See *Miller & Miller Auctioneers, Inc. v. Mersch*, 1977, D.C.Okl., 442 F.Supp. 570; 18 Am.Jur.2d, Corporations, §§ 14 and 15. In order to promote the ends of justice in appropriate cases, the corporate veil will be pierced and the corporation and its stockholders will be treated identically. *DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 1976, 4 Cir., 540 F.2d 681. In deciding whether the corporate veil will be pierced, we recognize that "each case is *sui generis* and must be decided in accordance with its own underlying facts." *Brown Brothers Equipment Co. v. State*, 1974, 51 Mich.App. 448, 215 N.W.2d 591, 593. See also, *DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, supra.

Disregarding the corporate entity or piercing the corporate veil may result from the occurrence of numerous factors. The primary factor considered by the trial court was the misrepresentation of Toure's financial condition by the directors during negotiations prior to execution of the agreement. Five basic requirements for the recovery from individual directors on the theory of fraudulent representation of financial condition are listed as follows: (1) a false representation of a material fact made by the directors; (2) the directors making the representation knew the fact was not true or made the statement recklessly with no reasonable grounds for believing it to be true; (3) the misrepresentation was made with the intent to induce MCI to act upon it; (4) MCI took action or refrained from acting in reliance upon the misrepresentation; and (5) MCI incurred damage from such reliance. *Cargill, Inc. v. American Pork Producers, Inc.*, 1977, D.C.S.D., 426 F.Supp. 499, 503.

The trial court found that various representations were made by the directors as to the financial ability of Toure to improve and operate the Mobridge plant and the investment money that was forthcoming. The Toure financial statement exhibited by the directors to MCI during the negotiations showed a net worth of $90,000, and a second statement showed a net worth of $65,000. This discrepancy was explained as the good will factor of approximately $25,000. At the time the statements were exhibited to MCI, Toure had approximately $62.08 in its corporate account. Thus, the first requirement is satisfied. Regarding the second requirement of knowledge on the part of the directors, the trial court found that the directors were experienced in business affairs, were accompanied by a banker and, considering outstanding obligations, certainly knew that Toure was "broke." We find that this requirement is further satisfied due to the fact that directors of a corporation are "presumed to have knowledge of the financial affairs of their corporation when making statements concerning its financial condition." *Briggs Transp. Co. v. Starr Sales Co.*, 1978, Iowa, 262 N.W.2d 805, 809. The third requirement is satisfied by the very nature of the facts and circumstances surrounding the negotiations between Toure and MCI regarding the Mobridge plant. The financial statements were padded or inflated to induce MCI to close the transaction. The final two requirements are met in that MCI acted in reliance on the inaccurate financial information given by the directors in entering into the agreement for sale and lease and incurred damages as a result of its reliance as Toure was not in any financial condition to fulfill its side of the agreement. Therefore, the trial court finding that the theory of fraudulent representation of financial condition rendered the directors liable jointly and severally is supported by the record and is not clearly erroneous.

A further factor justifying a disregard of the corporate entity in this case is inadequate capitalization. An obvious inadequacy of capital, measured by the nature and magnitude of the corporation's

undertaking, is an important factor in denying directors and controlling shareholders the corporate defense of limited liability. See, *Anderson v. Abbott,* 1944, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793; Annot. 63 A.L. R.2d 1051. The rationale is more completely explained in *Briggs Transp. Co. v. Starr Sales Co.,* supra, as follows:

"'If a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt the shareholders from corporate debts. It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities. If capital is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege.'" 262 N.W.2d at 810, quoting Ballantine, Corporations, § 129, pp. 302–303 (rev. ed. 1946).

The record supports the conclusion that Toure was inadequately capitalized in view of the magnitude of its undertaking embodied in the agreement, and therefore the corporate entity must be disregarded.

The directors of Toure made several false representations to MCI in addition to that of financial ability to carry out the agreement. Cook's banker accompanied him during the negotiation process, and Cook's role as treasurer of Toure was emphasized to the point that he would "ride herd" over and be "watchdog" of the funds. There were also misrepresentations regarding marketing networks that were waiting for Toure's products. The fact that appellants were involved in the venture provided considerable credibility to the representations and negotiations. Further misrepresentations came in the form of a Toure manage-

ment resume which included several reputable individuals in the business community who were to join Toure management within a month's time. There were other misrepresentations as to start-up time, worldwide patents owned or pending, availability of molds, plant improvements, and an influx of investment money.

■■■ Appellants argue that representations as to future events are not actionable and that the false representations must be of past or existing facts. Although this is the general rule, we have stated that an exception comes into existence when the misrepresentation of a future event is in regard to a matter which is peculiarly within the speaker's knowledge. *Aschoff v. Mobil Oil Corp.,* 1977, S.D., 261 N.W.2d 120. For example, the directors of Toure collectively exhibited a particular expertise in the products involved and represented that some of the products were so new and superior to others on the market that the Mobridge plant was ideal so that production would remain a secret in the industry and the product ideas would not be stolen prior to patenting and marketing. These representations as to the innovative nature of the products were also tied into the anticipation of the market, addition of management personnel, and influx of investment money. We conclude that the exception applies under these circumstances and the representations as to future events are actionable along with the representations of past or existing facts.

■■■ Appellants further argue that they acted in good faith and were not aware of what was going on at all times pertinent to this case. This is without merit because corporate officers and directors are held to a high degree of diligence and due care in the exercise of their fiduciary duty to shareholders. By accepting such duty, each director is charged with monitoring the heartbeat of the business and knowing where the corporation stands in regard to finances, obligations, goals, policies, etc. Where such a duty exists, ignorance due to neglect of that duty "creates the same lia-

bility as actual knowledge and a failure to act thereon." *Fowler v. Elm Creek State Bank*, 1977, 198 Neb. 631, 254 N.W.2d 415, 419. Since appellants failed to exercise the duty imposed on corporate directors, they can hardly claim ignorance and lack of awareness "by emulating the three fabled monkeys, hearing, seeing and speaking no evil." *Briggs Transp. Co. v. Starr Sales Co.*, supra at p. 811.

██ We conclude that the conduct of the directors constitutes the kind of dealing which would make it inequitable for the trial court to recognize the corporate entity of Toure and thus permit the individual directors to escape personal liability. While we have held that a corporation existed during the material time when the misrepresentations were made in regard to the assets of this corporation, we are aware of the fact that the Toure board on February 17, 1976, voted to dissolve the corporation by March 15, 1976, and that the corporation was officially dissolved by the State of Illinois on December 1, 1976. It was during this dissolution process that most of the property was removed from the Mobridge plant. This may not meet the requirements of SDCL 47–2–59 for purposes of holding the members of the board jointly and severally liable, but it certainly adds weight to our decision that this is a proper case to pierce the corporate veil because the legal corporation was of short duration (two and one-half years), was never used for any purpose except the personal immunity of the members of the board in their questionable activities, and was in the process of being dissolved when the assets were actually looted from the Mobridge plant. We are not compelled to say that the trial court finding of sufficient facts to warrant piercing the corporate veil of limited liability is clearly erroneous, and we will not disturb such finding on appeal.

The third theory of liability relied upon by the trial court is the trust fund doctrine that once Toure became insolvent the directors were charged with the fiduciary responsibility of holding the corporate assets in trust for the benefit of creditors. On the basis of our conclusion that the theory of piercing the corporate veil as discussed above warrants a finding of personal liability of the directors of Toure it is unnecessary to discuss the third theory that the trial court used to charge the directors with personal liability on the breach of contract.

██ The appellants also allege that MCI has failed to prove damages in the amount of $250,000 by credible evidence. SDCL 21–2–2 provides:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation with interest thereon."

The contract breached in this case was an obligation to pay money only ($250,000 in equal installments of $50,000, none of which was ever paid), and the trial court finding that the amount due by the terms of the obligation was the proper measure of damages cannot be held to be clearly erroneous.

The finding of personal liability and the award of damages is supported by the record, and the judgment of the trial court is affirmed.

WOLLMAN, C. J., and ZASTROW and MORGAN, JJ., concur.

PORTER, J., deeming himself disqualified, took no part in this decision.