**Bob CURTIS, Plaintiff and Appellant,**

v.

**Emery VLOTHO, Defendant,**

**and**

**Jerry Feurhelm, Frank Seitzinger, and Robert Seegers, Defendants and Appellees,**

**and**

**Ted Jensen, Defendant.**

**13244.**

Supreme Court of South Dakota.

Argued April 23, 1981.

Decided Dec. 16, 1981.

Rehearing Denied Jan. 14, 1982.

Charles Rick Johnson of Johnson, Johnson & Eklund, Gregory, for plaintiff and appellant.

Gene Lebrun of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellee Feurhelm.

Ann C. Jones of Banks & Johnson, Rapid City, for defendants and appellees Seitzinger and Seegers; Ronald W. Banks of Banks & Johnson, Rapid City, on the brief.

MILLER, Circuit Judge.

This is an action in which Bob Curtis, appellant, seeks to hold the corporate directors of American Pork Producers, Inc., appellees, personally liable for an insufficient funds check drawn on the corporate bank account. The trial court refused to hold the directors personally liable and denied appellant any recovery thereon. We reverse and remand for further proceedings.

## FACTS

Appellant is president and manager of Bob Curtis Trucking, Inc., located in Winner, South Dakota. Appellees Vlotho, Fuerhelm, Seitzinger, and Seegers were the corporate directors of American Pork Producers, Inc., an Iowa corporation which operated a hog-raising facility in Igloo, South Dakota.

In September 1974, Ted Jensen, manager of American Pork, contacted appellant concerning the possibility of obtaining feed for the corporate hog-raising activities. Appellant agreed to sell American Pork 422,790 pounds of milo.[1] Shortly thereafter, appellant delivered the milo to American Pork's feedlot in Igloo and received a $25,367.40

---

1. At the request of Ted Jensen, appellant had sold feed grain to American Pork on various other occasions.

corporate check from Jensen in exchange for the feed.[2]

Appellant deposited the check into his bank account. He was later advised that the check had been returned by the bank for insufficient funds.

Appellant then contacted appellee Seegers regarding the check, who personally satisfied $10,000 of the indebtedness. Seegers also informed appellant that American Pork was experiencing financial difficulties but that payment of the outstanding balance would be forthcoming as soon as the corporation secured additional financing. Appellant never received the remaining amount despite repeated demands.

Appellant then commenced suit against American Pork seeking to recover the $15,-367.40 balance and received a default judgment on June 24, 1975. Since the corporation was unable to satisfy the judgment,[3] appellant commenced the present action seeking to hold appellees as directors of American Pork personally liable for the outstanding balance of the check.

The trial court denied appellant any recovery and refused to hold appellees personally liable. The trial court determined it could not pierce the corporate veil and hold the directors personally liable for the insufficient funds check because appellant had failed to meet the requirements which this Court established in *Mobridge Community Industries v. Toure*, 273 N.W.2d 128 (S.D. 1978), (hereinafter cited as *Mobridge* ).

■ In *Mobridge*, supra, at 132, the Court held that a fraudulent representation by the directors regarding the corporate financial condition justified a disregard of the corporate entity and a holding that the directors were personally liable for the corporate debts.[4] Before a party may recover from individual directors under the theory of fraudulent representation, however, he must meet five basic requirements, which include:

(1) a false representation of a material fact made by the directors; (2) the directors making the representation knew the fact was not true or made the statement recklessly with no reasonable grounds for believing it to be true; (3) the misrepresentation was made with the intent to induce [another] to act upon it; (4) [the other party] took action or refrained from acting in reliance upon the misrepresentation; and (5) [the plaintiff] incurred damage from such reliance.

*Mobridge*, supra, at 132, citing *Cargill, Inc. v. American Pork Producers, Inc.*, 426 F.Supp. 499, 503 (D.C.S.D.1977).

The trial court, in applying these factors, found no fraudulent representation by appellees and no reliance by appellant upon any misrepresentation. It therefore refused to disregard the corporate entity and hold the directors personally liable for the insufficient funds check.

Although we agree with the trial court that appellant neither pleaded nor established the five requirements of *Mobridge*, supra, we are of the opinion that fraudulent representation is not the only applicable theory pleaded by appellant that justifies a disregard of the corporate entity.[5] As we

---

**2.** Jensen admitted at trial that he knew sufficient funds did not exist in the corporate account to cover the check when he issued it to appellant.

**3.** It appears from the record that American Pork was theoretically insolvent from June of 1974 to the present when attempts to secure additional financing failed. See *Cargill, Inc. v. American Pork Producers, Inc.*, 426 F.Supp. 499, 508 (D.C.S.D.1977). Thus, appellant was forced to look to the individual directors in order to recover the remaining indebtedness.

**4.** In *Mobridge*, supra, the directors had grossly overstated the corporate net worth in order to induce the plaintiff to sell the corporation certain items of personal property and equipment.

**5.** Appellant argues on appeal that the drawing of an insufficient funds check amounts to a fraudulent representation of material fact and should satisfy the requirements of *Mobridge*, supra. See, e.g., *Hi-Pro Fish Products, Inc. v. McClure*, 346 F.2d 497, 499 (8th Cir. 1965); *Wold v. Patterson*, 229 Minn. 361, 39 N.W.2d 162 (1949); and 37 Am.Jur.2d *Fraud and Deceit* § 412 (1968). Although this contention may have merit, we will not consider it since it was raised for the first time on appeal.

stated in *Mobridge*, supra, at 132, "[d]isregarding the corporate entity or piercing the corporate veil may result from the occurrence of numerous factors."

Some of these factors, in addition to fraudulent representation, that may result in a disregard of the corporate entity and which are included within the scope of appellant's pleadings include: (1) undercapitalization; [6] (2) failure to observe corporate formalities; (3) absence of corporate records; (4) payment by the corporation of individual obligations; and (5) use of the corporation to promote fraud, injustice, or illegality. *Lakota Girl Scout C., Inc. v. Havey Fund-Rais. Man., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975); *Briggs Transp. Co., Inc. v. Starr Sales Co.*, 262 N.W.2d 805, 810 (Iowa 1978); *Speer v. Dighton Grain Inc.*, 229 Kan. 272, 624 P.2d 952, 958 (1981); 1 W. M. Fletcher, Cyclopedia of the Law of Private Corporations § 41.3 (rev. perm. ed. 1974).

The trial court did not consider these other factors when it refused to hold appellees personally liable for the insufficient funds check. It considered only the theory of fraudulent representation and denied appellant's request to pierce the corporate veil. There is evidence within the record that might support a disregard of American Pork's corporate identity based upon each of these other factors.[7] Since the trial court has not yet considered these other factors, we will not do so for the first time on appeal.

It must be emphasized that in making this decision we are merely holding that fraudulent representation is not the only theory that justifies a disregard of the corporate entity. Other factors previously identified may also result in personal liability of the individual corporate directors. As we stated in *Mobridge*, supra, "[i]n deciding whether the corporate veil will be pierced, we recognize that 'each case is *sui generis* and must be decided in accordance with its own underlying facts.'" 273 N.W.2d at 132, quoting *Brown Brothers Equipment Co. v. State*, 51 Mich.App. 488, 215 N.W.2d 591, 593 (1974).

Based upon the foregoing, we reverse the judgment and remand the case to the trial court with directions that it make a determination regarding all of the factors previously enumerated.

All the Justices concur.

MILLER, Circuit Judge, sitting for HENDERSON, J., disqualified.

---

**6.** It is noteworthy that the Court's decision to disregard the corporate entity in *Mobridge* was based not only upon the directors' fraudulent representation but also upon the fact that the corporation was undercapitalized. *Mobridge*, supra, at 132–33.

**7.** For example, there is evidence within the record which indicates that American Pork was in dire need of additional financing and did not have sufficient capital or assets available to meet outstanding debts. It also appears that appellees failed to follow corporate formalities when they discontinued regular meetings. Moreover, crucial corporate records were conspicuously absent and could not be located. Finally, there is evidence in the record which indicates that substantial corporate assets were used to reduce appellees' personal obligations.