Greer and Alan GLANZER, Plaintiffs and Appellants (# 16170)

v.

ST. JOSEPH INDIAN SCHOOL, Defendant,

Dehon Industries, Inc., Defendant and Appellant (# 16196).

Nos. 16170, 16196.

Supreme Court of South Dakota.

Argued Nov. 29, 1988.

Decided March 22, 1989.

Albert Steven Fox and David J. Larson of Larson, Sundall, Larson, Schaub and Fox Chamberlain, for plaintiffs and appellants.

Leonard E. Andera and Steven R. Smith of Andera, Rabuck and Smith Law Offices Chamberlain, for defendant and appellant.

TIMM, Circuit Judge.

This is an action by the limited partners (Glanzers) against their general partner (Dehon) and the general partner's parent corporation (St. Joseph's [1]).

## BACKGROUND AND PROCEDURAL HISTORY

On June 20, 1984, the Glanzers and Dehon formed a limited partnership, Glanzer Tackle Company, to manufacture and distribute fishing tackle and related products. In the four years preceding the partnership, the Glanzers operated a tackle-making business out of their home near Chamberlain. The assets of that business, including inventory, equipment, customer sales list, good will, and the Glanzer name, were contributed by the Glanzers to the partnership.

The partnership agreement required Dehon to contribute $30,000 in cash, provide accounting services for one year, provide space for one year, and pay utilities and property taxes for one year. Dehon also agreed to pay Glanzers $20,000 for contributing the assets of their tackle business to the partnership, $10,000 of which was due on or before July 1, 1984, and the remaining $10,000 was to be paid to the partner-

---

1. St. Joseph's Indian School is the name under which the Congregation of the Priests of the Sacred Heart, Inc., a South Dakota corporation, is registered to do business in Brule County, the venue of this action. Dehon Industries, Inc., a South Dakota corporation, is a subsidiary of the Priests of the Sacred Heart, Inc.

ship and passed through to the Glanzers on or before April 1, 1985. Additionally, the partnership was to employ Alan Glanzer for three years with minimum compensation for each of the years being $20,000, $22,000 and $24,000.

The Glanzers did not receive the $10,000 due them on or before April 1, 1985. Three months later Alan Glanzer's employment was terminated by the partnership, and Glanzer Tackle Company sought bankruptcy protection.

On August 6, 1985, Glanzers commenced an action against Dehon and St. Joseph's alleging breach of the partnership agreement, negligent and intentional infliction of emotional distress, fraudulent and negligent misrepresentation, guarantee, and breach of fiduciary duty. St. Joseph's liability was predicated on theories of disregard of corporate entity and agency.

On August 25, 1985, St. Joseph's entered a special appearance and motion to dismiss. A hearing on the motion took place November 7, 1985. On January 6, 1986, the trial court dismissed the action against St. Joseph's. The action against Dehon was tried to a jury in December of 1987. The jury returned a verdict for Glanzers in the amount of $120,001.00. Both parties appeal. We affirm, in part, reverse, in part, and remand for a new trial.

### ISSUE I

WHETHER THE TRIAL COURT ERRED IN GRANTING ST. JOSEPH'S MOTION FOR SUMMARY JUDGMENT.

The South Dakota Rules of Civil Procedure in circuit courts state that if, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the trial court, the motion should be treated as one for summary judgment and disposed of as provided in SDCL 15-6-56.[2]

2. SDCL 15-6-12(b).

3. The only pleading on file at the time of the trial court's disposition of St. Joseph's motion to

The record before us plainly indicates that matters outside the pleadings [3] were presented to the trial court. That they were considered is specifically mentioned in the trial court's order disposing of the motion. Accordingly, on review we treat St. Joseph's motion to dismiss as one for summary judgment and the disposition a grant of that motion.

SDCL 15-6-56(c) authorizes summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Glanzers argue that the trial court erred in granting summary judgment because there is a factual dispute as to whether Dehon is an instrumentality or agent of St. Joseph's.

In gauging the propriety of the trial court's grant of summary judgment, we invoke the same legal principles that bind the trial court: (1) the burden of proof is on the moving party to show clearly that there is no genuine issue of material fact; (2) the evidence must be viewed most favorably to the nonmoving party; (3) summary judgment is not intended to be a substitute for trial where any genuine issue of material fact exists; (4) a surmise that a party will not prevail at trial is not a sufficient basis to grant the motion on issues which are not shown to be sham, frivolous, or so unsubstantiated that it is obvious it would be futile to try them; (5) summary judgment is an extreme remedy and should be awarded only when the truth is clear, and reasonable doubt touching the existence of a genuine issue as to a material fact should be resolved against the moving party; (6) however, the court may expose sham claims and defenses by the nonmoving party. *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968); *Farmers Feed & Seed v. Magnum Enterprises*, 344 N.W.2d 699 (S.D.1984).

Glanzers predicated St. Joseph's liability for the acts of Dehon upon the instrumentality exception to the rule of corporate separateness and agency. St. Joseph's

dismiss was the complaint; neither Dehon nor St. Joseph's had filed an answer.

bore the burden of showing there was no genuine issue of material fact under either theory. In determining whether that burden was met, we first examine those theories.

A parent corporation is liable for the acts of its subsidiary under the instrumentality exception when (1) the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former; and (2) adherence to the rule of corporate separateness would produce injustices and inequities. *Larson v. Western Underwriters*, 77 S.D. 157, 87 N.W.2d 883, 887 (1958); *Mobridge Community Industries, Inc. v. Toure, Ltd.*, 273 N.W.2d 128, 132 (S.D.1978). Similarly, a parent corporation is liable for the acts of its subsidiary when an agency relationship exists between them. *Elvalsons v. Industrial Covers, Inc.*, 269 Or. 441, 525 P.2d 105 (1974); *Soderberg Advertising, Inc. v. Kent–Moore Corp.*, 11 Wash.App. 721, 524 P.2d 1355 (1974).

Under the first leg of the instrumentality exception, a number of factors have been identified which indicate the degree of control necessary to hold the parent liable:

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

Powell, Parent and Subsidiary Corporations, § 5–6, at 9 (1931). *See Taylor v. Standard Gas & Electric Co.*, 96 F.2d 693, 704 (10th Cir.1938); *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir.1963); *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173 (5th Cir.1981); *Garrett v. Southern Ry.*, 173 F.Supp. 915 (E.D.Tenn.1959); *Duff v. Southern Ry. Co.*, 496 So.2d 760 (Ala.1986); *Jackson v. General Electric Company*, 514 P.2d 1170 (Alaska 1973). *See also* Annotation, 7 A.L. R.3d 1343 (1966).

All of these factors need not be present for the trier of fact to conclude that the subsidiary is a mere instrumentality of its parent. *Jackson, supra*, at 1173. Nor is the list exhaustive. *Duff, supra*, at 763. Each case is sui generis and must be decided in accordance with its own underlying facts. *Mobridge Community Industries, Inc., supra*, at 132.

Upon finding instrumentality the trier of fact must then consider whether retention of corporate separateness would produce injustices and inequitable consequences. The second leg of the instrumentality exception is established where the wrong alleged is a result of fraudulent, unjust or illegal acts. *Curtis v. Vlotho*, 313 N.W.2d 469 (S.D.1981); *Curtis v. Feurhelm*, 335 N.W.2d 575 (S.D.1983); *Farmers Feed & Seed, supra; Mobridge Community Industries, supra*.

Liability on the agency theory is established if the following factual elements are present: (1) manifestation by the principal that the agent shall act for him; (2) the

agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking. *Southard v. Hansen*, 376 N.W.2d 56, 58 (S.D.1985); *Kasselder v. Kapperman*, 316 N.W.2d 628 (S.D.1982); *Watkins Company v. Dutt*, 84 S.D. 453, 173 N.W.2d 41 (1969).

With these theories in mind, we turn to the facts presented by St. Joseph's to the trial court. At the hearing on the motion for summary judgment, St. Joseph's rested on the affidavit of Father Cassidy. The affidavit established that (1) St. Joseph's was operated by the Congregation of the Priests of the Sacred Heart, Inc.; (2) the Congregation of the Priests of the Sacred Heart, Inc., owned stock in Dehon; (3) Father Cassidy was superintendent of St. Joseph's, president of the board of directors of the Congregation of Priests of the Sacred Heart, Inc., and president of the board of directors of Dehon; (4) employees of St. Joseph's either had served or were currently serving as directors and officers of Dehon and the congregation of the Priests of the Sacred Heart, Inc. Additionally, the affiant drew the conclusion that St. Joseph's was not "a party to any agreement, contract or had any other relationship with the plaintiffs ..." pertaining to the matters in issue in the lawsuit.

Although these meager facts coupled with a legal conclusion fall far short of the evidentiary mark established for a moving party by SDCL 15–6–56(e), the trial court refused to deny St. Joseph's motion and directed Glanzers to proceed with their resistance to the motion. Additional facts came to light: (1) Father Westhoven was the Director of Development of St. Joseph's and the Treasurer of the Board of Directors of Dehon; Cy Maus was the Senior Executive Officer for Development at St. Joseph's, the Executive Director of the St. Joseph's Lakota Development Council and the Secretary of the Board of Directors of Dehon; (2) the manager of Glanzer Tackle Company was an employee of St. Joseph's, receiving compensation solely from St. Joseph's; (3) Glanzer Tackle Company was located in the same building as the St. Joseph's Lakota Development Council; (4) St. Joseph's was a nonprofit corporation involved in helping Indian people and created the St. Joseph's Lakota Development Council to assist Indian business on the reservation; (5) Dehon was incorporated to develop Indian-oriented business ventures; (6) Cy Maus testified that the sole intent in creating Glanzer Tackle Company was to provide income, employment and business outlets for Indian people; (7) the Glanzers were insured through St. Joseph's medical insurer; (8) Alan Glanzer's W–2 for 1984 listed St. Joseph's as his employer; (9) Alan Glanzer was paid for work done for Glanzer Tackle Company by checks drawn on St. Joseph's account; (10) Dehon paid St. Joseph's for some services provided Glanzer Tackle Company with stock or notes, while other services were provided in the form of "grants;" (11) St. Joseph's, in exchange for stock, capitalized Dehon; (12) Dehon used St. Joseph's stationery in transacting business; (13) the Lakota Development Council used Glanzer Tackle Company's secretary; (14) Alan Glanzer had been hired by the partnership with Dehon guaranteeing employment and salary for a minimum of three years; (15) Alan Glanzer's employment was terminated prior to the expiration of the term of employment; (16) Alan Glanzer did not receive $10,000 pursuant to the terms of the partnership agreement; (17) Dehon mismanaged Glanzer Tackle Company by (a) wasting partnership funds, (b) antagonizing partnership customers, (c) ignoring established markets, (d) improvidently discounting products, (e) failing to hire adequate sales personnel, (f) incurring excessive debt, and (g) failing to pay creditors; and (18) the partnership agreement provided that Dehon, St. Joseph's "or their subsidiaries or associated entities" would provide "space or equipment rental, accounting services, mailing services, computer time, and other ... services" to Glanzer Tackle Company with approval of the partners at the lesser of market cost or the cost the provider charged others for the same service.[4]

---

**4.** The partnership agreement was not introduced into evidence at the motion hearing.

Based on these facts there need not be a lengthy discussion of whether a question of material fact exists under the first leg of the instrumentality exception. The foregoing evidence addresses virtually every indicia of control previously listed.

■ Under the second leg of the instrumentality exception, questions of material fact are also revealed. While it is true that some courts are more hesitant to pierce the corporate veil in contract cases than tort cases, *see e.g. Miller v. Dixon Industries Corp.*, 513 A.2d 597 (RI 1986), this case is not a mere contract action. Fraud, negligence and breach of fiduciary duty have also been pled. The evidence before the trial court on St. Joseph's control of Dehon, Dehon's mismanagement of Glanzer Tackle Company, failure to meet financial obligations to Glanzers, and self-dealing raises questions of injustice and inequity were St. Joseph's not held liable for the acts of Dehon. Accordingly, we find St. Joseph's reliance on *Almac, Inc. v. JRH Development, Inc.*, 391 N.W.2d 919 (Minn.App. 1986) to be ineffectual. The fact that Glanzers chose to contract with Dehon rather than St. Joseph's is insufficient to support the court's award of summary judgment.

■ Glanzers' agency theory should also have survived the motion for summary judgment. Evidence of the formation of Dehon to accomplish St. Joseph's mission, Dehon's acceptance of that role and control of Dehon by St. Joseph's should have preserved this issue for jury resolution.

When measured against the previously defined theories of corporate liability, the evidence demonstrates issues of material fact as to Dehon's status as an instrumentality or agent of St. Joseph's. We are compelled to conclude that St. Joseph's failed to shoulder its burden of presenting a prima facie case for summary judgment. Thus, the trial court erred in granting the motion. *Wm. Collins, Inc. v. S. D. State Bd. of Transp.*, 264 N.W.2d 491 (S.D.1978). On remand, the question of St. Joseph's liability for the acts of Dehon must be placed before the jury.

## ISSUE II
WHETHER THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON ALAN GLANZER'S LOST SALARY AND RESEARCH AND DEVELOPMENT INCOME AS AN ELEMENT OF DAMAGE.

■ It has long been the rule in South Dakota that a trial court is duty bound to instruct the jury as to the law of the case as it pertains to any theory of the parties supported by the evidence, while it is the duty of the parties to submit to the court such requests for instructions as they may deem proper or to call to the court's attention proposed instructions which improperly state the law. SDCL 15–6–51(a) and SDCL 15–6–51(b); *State v. Egan*, 47 S.D. 1, 195 N.W. 642 (1923); *Zakrzewski v. Hyronimus*, 81 S.D. 428, 136 N.W.2d 572 (1965); *State Highway Comm. v. Fortune*, 77 S.D. 302, 91 N.W.2d 675 (1958). An objection to an instruction must specify clearly wherein the instruction is insufficient or does not state the law. *Baumgartner's Electric Const. Co. v. DeVries*, 77 S.D. 273, 91 N.W.2d 663 (1958). For this court to set aside a civil verdict because of an erroneous instruction, prejudice must be established. *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 119 (S.D.1977); *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958). The appellant must demonstrate that under the evidence the jury might have, and probably would have, returned a different verdict if a correct instruction had been given. *Schmidt, Id.* at 119.

■ Glanzers' complaint alleged that Dehon breached their partnership agreement by failing to make "payments agreed to under that agreement" and prayed for damages due to that breach. At trial the partnership agreement was introduced, as was evidence that certain obligations of the partnership to Glanzer, allegedly guaranteed by Dehon, had been breached. The

However, the record indicates that the agreement was to be provided to the court subsequent to the hearing. The court's memorandum

opinion alludes to the agreement and apparently was considered in granting the motion for summary judgment.

partnership agreement contained the following language:

It is mutually acknowledged that a part of the inducement of the partners to enter into this agreement is the right of the General Partner to avail the partnership of the experience and expertise of Alan Glanzer and the desire of Limited Partners to have a minimum annual income. To such end, the partnership agrees that it will employ Alan Glanzer to provide advice, promotion and research and development to the partnership. Such will be done upon mutual agreement as to the time, places, frequency, duration and exact nature. Such employment shall be made available by the General Partners for a period of ten years; and guaranteed by the General Partner as hereafter set forth for a period of three years.

In order to provide security for the Limited Partners to an extent which will allow the services of Alan Glanzer, the partnership agrees to compensate said Limited Partner as follows:

... not less than $20,000.00 in cash in 1984/85, not less than $22,000.00 cash in 1985/86 and not less than $24,000.00 cash in 1986/87.

During settlement of instructions the trial court proposed the following instruction:

### Instruction No. 3

In this case, the Plaintiffs, Alan and Greer Glanzer, as the owners and operators of Glanzer Tackle Company, claim that they entered into a partnership agreement with the Defendant, Dehon Industries, Inc., in which Dehon agreed that the value of the business was $117,-000.00, agreed to pay the Plaintiffs $20,-000.00, and do certain other acts in return for a share of the Glanzer's tackle business.

The Glanzers claim that Dehon has failed to meet the terms of the agreement, in that it has failed to pay $10,000.00 owed from the original $20,000.00, and allegedly mismanaged and improperly ran the partnership resulting in its failure. The Plaintiffs claim that the Defendant's alleged mismanagement of the business and failure to adhere to the terms of the contract, and harassment by the Defendant, has caused the Plaintiffs mental and physical stress which the Plaintiffs should be compensated for.

The Plaintiffs have requested that they be paid the amounts of $10,000.00 owed under the partnership agreement and $361,000.00 for loss of future earnings from the profits of the partnership, that they receive the sum of $250,000.00 for emotional and physical distress suffered by them, and that they be awarded such amount as to compensate them for any misrepresentations by the Defendants.

The Defendant admits that it entered into a limited partnership agreement with the Plaintiffs under which the amount of $10,000.00 is still owed to the Plaintiffs, but asserts that Plaintiffs misrepresented the real value of the business to the Defendant, and because of such misrepresentations, the Plaintiffs should be denied the $10,000.00 payment owed. Furthermore, the Defendant denies that the Glanzers have suffered any damage, but claims that if they have, such damages were caused by the Glanzers' own misrepresentations, Alan Glanzer's interference with the running of the business, and because of other improper actions or failure to act by the Plaintiffs.

Dehon Industries has also counterclaimed against the Glanzers and alleged that the Glanzers misrepresented the value of the business and its assets, and misrepresented the profitability of the business. Dehon has claimed that Alan Glanzer improperly engaged in certain activities which were harmful to the business and interfered in the contract between the partners.

Dehon claims that such actions on the part of the Plaintiffs have been deliberate, fraudulent, and deceitful, and that because of such interference, fraud and deceit, they have suffered loss of business, actual cash disbursements, costs, and assumed obligations formerly of the Plaintiffs in the amount of $210,000.00. Dehon also claims that because of the fraud and deceit of the Plaintiffs, it is

entitled to punitive or exemplary damages in the amount of $500,000.00.

The Plaintiffs have denied these claims by the Defendant.

Glanzers objected to the instruction as being an incomplete statement of their theories of recovery against Dehon. They informed the court that the instruction "should also include [Dehon] failed to pay Glanzers wages as specified in the agreement, to which Dehon guaranteed in the agreement." The objection was overruled.

Another instruction related to Glanzers' claim on the guarantee was also proposed by the court:

### Instruction No. 82

You are hereby instructed that any amounts that may be owed to the Glanzers from the partnership known as Glanzer Tackle Company, such as sales commissions, salaries, or for research and development, is not before this court and should not be considered by you. Such claims are to be determined by the Bankruptcy Court in a separate proceeding.

Glanzers objected to the foregoing instruction for the reason that their claim against Dehon on the guarantee was properly before the trial court. The objection was overruled.

In defense of the trial court's rulings, Dehon argues two positions. First, Dehon alleges that the partnership agreement does not contain its guarantee of Glanzer Tackle Company's wage obligation to Alan Glanzer. Second, Dehon contends that Glanzers' failure to propose instructions on the guarantee waives the issue on appeal.

Neither of Dehon's positions is tenable. SDCL 56–1–1 defines a guarantee as "a promise to answer for a debt, default, or miscarriage of another person." The above-quoted language from the partnership agreement is certainly Dehon's guarantee of the partnership's wage obligation to Alan Glanzer. Furthermore, SDCL 15–6–51(b) is clear on its face that an objection to an instruction need not be accompanied by a proposed instruction in order to place the objected-to instruction before this court on appeal.

The trial court's reason for keeping the wage claim from the jury is equally untenable. For bankruptcy purposes, a partnership is a distinct legal entity existing apart from its partners. *In re Dreske*, 25 B.R. 268 (Bankr.Wis.1982). Dehon, as a general partner in Glanzer Tackle Company, was not protected under federal bankruptcy law from a state court proceeding based on guarantee. *In re Yagow*, 60 B.R. 543 (Bankr.D.N.D.1986).

We have reviewed the evidence and the verdict and find that had a correct instruction been given to the jury on Glanzer's wage claim under the guarantee theory, the jury probably would have returned a different verdict. Therefore, we reverse the trial court's rulings on instructions number 3 and 82.

### ISSUE III

WHETHER THE TRIAL COURT ERRED IN FAILING TO INCLUDE IN ITS JURY INSTRUCTIONS THOSE TENDERED BY THE GLANZERS, WHICH ADDRESSED DEHON'S FIDUCIARY DUTIES AS A GENERAL PARTNER.

A fiduciary duty is an obligation arising from the intimacy of the parties' relationship, and it is owed from a general partner to a limited partner. *Gundelach v. Gollehon*, 42 Colo.App. 437, 598 P.2d 521 (1979). This duty is characterized by a loyalty of the highest order. *See Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928). When acting for the partnership and the limited partners, the general partner, as a fiduciary, must walk a moral path above that tread by other members of the economic marketplace. *Id.* The general partner thus shoulders a heavy burden.

In this case, the Glanzers asserted that Dehon failed to carry its burden on several occasions. For instance, Dehon, according to the Glanzers, dealt at less than arms length with related entities, such as the Lakota Development Council and St. Joseph's, and used the second $10,000 due

Alan Glanzer as an enticement to keep him and his wife from initiating this lawsuit. At trial, these averments received evidentiary support.

 Despite this evidentiary underpinning, the trial judge declined to include in his instructions on fiduciary duty those proposed by the Glanzers.[5] Instead, the trial judge chose to intersperse among his instructions eight which purportedly addressed Dehon's task as a fiduciary.[6]

Jury instructions are to be considered as a whole. If they correctly state the law and so inform the jury, they are sufficient. *State v. Miskimins,* 435 N.W.2d 217, 223–24 (S.D.1989). We find that the trial court correctly instructed the jury on the fiduciary duty owed by a general partner to a partner. The trial court's refusal of Glanzer's requested instructions is affirmed.

### ISSUE IV

WHETHER THE EVIDENCE CONCERNING GLANZER TACKLE COMPANY'S LOST PROFITS WAS SUFFICIENT TO ALLOW THE JURY TO ASSESS DAMAGES.

 Because we are remanding this case for a new trial, we feel that there is no

5. The Glanzers tendered the succeeding breach-of-fiduciary-duty instructions:

Plaintiff's proposed instruction no 13:
The business Glanzer Tackle Company was a limited partnership. DeHon Industries Inc. was the general partner. Alan and Greer Glanzer were the limited partners.

Plaintiff's proposed instruction no. 14:
A general partner is required to perform his duties as general partner, in good faith, in a manner he reasonably believes to be in the best interests of the general partnership, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

Plaintiff's proposed instruction no. 18:
The DeHon Industries, Inc. acting in complete control, stands in the same fiduciary capacity to the Glanzers as a trustee stands to the beneficiaries of the trust. DeHon Industries, Inc. is bound to act in the high good faith towards the Glanzers and may not obtain any advantage over the Glanzers by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.

Plaintiff's proposed instruction no. 20:
The DeHon Industries, Inc. may not in any manner use or deal with the partnership property for its own profit or for any other purpose unconnected with the partnership.

Plaintiff's proposed instruction no. 22:
DeHon Industries, Inc. may not acquire any interest or have any duty adverse to the interest of Glanzers.

Plaintiff's proposed instruction no. 23:
DeHon Industries, Inc. may not use the influence which its position gives it to obtain any advantgage [sic] over Glanzers.

Plaintiff's proposed instruction no. 24:
Every violation of the fiduciary duties by DeHon Industries, Inc. to the Glanzers is a fraud against Glanzers.

6. The trial court read to the jury these breach-of-fiduciary-duty instructions:

Court's instruction no. 64:
A statute of this state provides that every partner must account to the partnership for any benefit, and hold as a trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

Court's instruction no. 66:
A general partner is required to perform his duties as general partner, in good faith, in a manner he reasonably believes to be in the best interests of the general partnership, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

Court's instruction no. 67:
Implicit in a partner's fiduciary duty to other partners is the obligation to conduct partnership affairs in such a manner as to avoid damage to another partner's interest or damage to partnership interests.

Court's instruction no. 68:
Partners stand in a fiduciary relationship towards one another, and because of such relationship there is imposed upon them an obligation of utmost good faith and integrity in their dealings with one another in partnership affairs.

Court's instruction no. 77:
The DeHon Industries, Inc. may not in any manner use or deal with the partnership property for its own profit or for any other purpose unconnected with the partnership.

Court's instruction no. 78:
DeHon Industries, Inc. may not acquire any interest or have any duty adverse to the interest of Glanzers.

Court's instruction no. 79:
DeHon Industries, Inc. may not use the influence which its position gives it to obtain any advantgage [sic] over Glanzers.

Court's instruction no. 80:
DeHon Industries, Inc. has breached its duty to Glanzers if Dehon appropriated a business opportunity which it should have used and developed for the partnership.

need to conduct an extensive analysis of this last issue. For the benefit of the trial court and counsel, however, we note that the trial proof in this case was adequate to place the issue of lost profits in the hands of the jury.

While we have passed on several cases involving a plaintiff's allegation of lost profits,[7] none of them has veered from the general rules enunciated by us in *Olson v. Aldren*, 84 S.D. 292, 299, 170 N.W.2d 891, 895 (1969):

> Although sometimes difficult to prove, the generally accepted rule is that, where it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with reasonable or sufficient certainty, there may be a recovery therefore. [citation omitted] However, such damages must not be speculative, contingent, or uncertain and there must be reasonable proof of the amount thereof. Any reasonable method of estimating a prospective profit is acceptable. [citation omitted] Absolute certainty is not required.

We observe that the proof of lost profits included Dehon's profit projections and expert testimony from Glanzers' accountant. Testimony from the accountant established that he had valued several closely-held businesses. To determine the amount of lost profits due Glanzers, he examined Glanzer Tackle Company's past sales history, compared the company to a similar Minnesota-based enterprise, and investigated the fishing-tackle market. He then used this data to construct a sales-and-profit projection. This was an acceptable, reasonable method of estimating lost profits. Consequently, the trial court did not err when it allowed the jury to fix the amount of lost profits.

We have reviewed the remaining issues and find that they are either addressed herein or are without merit.

Affirmed in part, reversed, in part and remanded for a new trial.

MORGAN, HENDERSON SABERS and MILLER, JJ., concur.

TIMM, Circuit Judge, for WUEST, Chief Justice, disqualified.

---

**7.** *See Hepper v. Triple U Enterprises*, 388 N.W.2d 525 (S.D.1986); *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977); *O'Brien v. R–J Development Corp.*, 387 N.W.2d 521 (S.D.1986). *See* also *Horizons, Inc. v. Avco Corp.*, 714 F.2d 862 (8th Cir.1983). *See generally* Restatement (Second) of Contracts § 352 (1981).