Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
SATELLITE CABLE SERVICES, INC.,
Plaintiff and Appellee,
v.
NORTHERN ELECTRIC COOPERATIVE, INC.,
a South Dakota Corporation, and its Wholly-Owned Subsidiary
Northern Rural Cable TV Cooperative, Inc.,
Defendants and Appellants.
[1998 SD 67]
South Dakota Supreme Court
Appeal from the Fifth Judicial Circuit, Day County, SD
Hon. Myles J. DeVine, Judge
#20046--Affirmed in part; Reversed in part
Monte R. Walz, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD
Attorneys for Plaintiff and Appellee.
Harvey A. Oliver Jr., Richards & Oliver, Aberdeen, SD
James A. O'Neal, Faegre & Benson LLP, Minneapolis, MN
Attorneys for Defendants and Appellants.
Argued Jan 13, 1998; Opinion Filed Jul 1, 1998
KONENKAMP, Justice.
[Â¶1] After the circuit court enjoined an electric cooperative and its subsidiary from offering cable television service in violation of a statute, the Legislature amended the law to remove the prohibition. We therefore set aside the injunction as no longer sustainable under the amended statute, but remand the case for trial on the issue of damages incurred during the time the cooperative violated the former statute by competing in a municipality with an operating cable television service. Affirmed in part and reversed in part.
FACTS 
[Â¶2] Northern Electric Cooperative, Inc., organized under SDCL ch 47-21, with its principal office in Bath, South Dakota, supplies electricity to rural communities in the northeastern part of the state. Northern Electric belongs to another cooperative it created, Northern Rural Cable TV, Inc., formed to bring television signals to rural areas and small towns. Northern Cable initially furnished wireless subscription service to several Pierpont, South Dakota residents through a multichannel, multipoint distribution system (MMDS). MMDS delivers programming over microwave channels beamed to subscribers who have special antennas on or near their homes. See SDCL 22-44-4.
[Â¶3] In April 1994, Northern Cable began converting to a community antenna television system (CATV), offering cable service to subscribers in Pierpont.(fn1)  Since 1988, however, Satellite Cable Services, Inc., held an exclusive franchise to provide cable television to Pierpont residents. Satellite brought suit seeking both declaratory and injunctive relief as well as damages for interference with contractual and prospective contractual relations. Shortly afterwards, Northern Cable agreed to withdraw the offending CATV system. Then, in September 1995, after obtaining a franchise from the Pierpont Board of Trustees to offer CATV, Northern Cable began reconnecting its subscribers to the same system.
[Â¶4] The circuit court granted summary judgment to Satellite, holding that Northern Electric violated SDCL 47-21-2, and ordering that it be prohibited "from providing television service to Pierpont." Northern Electric and Northern Cable appeal raising the following questions: (1) Must the injunctive and declaratory relief be reversed because during appeal SDCL 47-21-2 was amended to allow rural electric cooperatives to participate in the subscription television industry? (2) Was Northern Electric authorized by statute to become a member of Northern Cable? (3) Whether Northern Cable, as a distinct corporate entity, could provide CATV and MMDS service to Pierpont? (4) Did the circuit court properly reject Northern Electric's and Northern Cable's constitutional and federal preemption claims?
STANDARD OF REVIEW 
[Â¶5] Under our well-versed standard for reviewing a grant or denial of summary judgment, we must decide if the moving party established the absence of any genuine issue of material fact and demonstrated entitlement to judgment on the merits as a matter of law. We view the evidence most favorably to the nonmoving party and resolve reasonable doubts against the moving party. When summary judgment is supported as provided in Â§15-6-56, the nonmovant may not rest on allegations or denials in the pleadings, but must respond by affidavit or as otherwise provided in Â§15-6-56, and set forth particulars showing genuine fact issues exist for trial. SDCL 15-6-56(e); Baatz v. Arrow Bar, 452 NW2d 138, 140 (SD 1990). If any basis exists to support summary judgment, affirmance is proper. Petersen v. Dacy, 1996 SD 72, Â¶5, 550 NW2d 91, 92 (citing Trippet Special Trust v. Blevins, 1996 SD 29, Â¶6, 545 NW2d 216, 221); Waddell v. Dewey Cty. Bank, 471 NW2d 591, 593 (SD 1991); see also Wilson v. Great N. Ry. Co., 83 SD 207, 211, 157 NW2d 19, 21 (1968). Statutory interpretation presents a question of law reviewable de novo. Lustig v. Lustig, 1997 SD 24, Â¶5, 560 NW2d 239, 241; Moss v. Guttormson, 1996 SD 76, Â¶10, 551 NW2d 14, 17; Wharf Res., Inc. v. Farrier, 1996 SD 110, Â¶5, 552 NW2d 610, 612.
ANALYSIS AND DECISION 
1. Effect of Statutory Amendment While Appeal Pending 
[Â¶6] At the time of the circuit court's decision, SDCL 47-21-2 (1994) provided in part:

Cooperatives may provide television service which includes multi-channel multi-point distribution systems, including those which utilize coaxial cable, and direct broadcast satellite service, and may provide programming to customers via a CATV system, as defined in Â§9-35-16, in any municipality which does not have an operating CATV system.
The circuit court held that the activities of Northern Electric and its wholly owned subsidiary, Northern Cable, violated this enactment by providing CATV service to the city of Pierpont. After judgment, the statute was amended to broaden the authorized activities for cooperatives.

Cooperatives may be organized under this chapter for any lawful purpose except banking, securities, and insurance. Cooperatives proposing to provide local exchange telephone service in a rural telephone company's service area may do so only in compliance with the procedures contained in section 251(f) of the Communication Act of 1934, as amended by the Telecommunications Act of 1996.
SDCL 47-21-2 (1997) (emphasis added).
[Â¶7] If, during an appeal, a statutory change is controlling, we see no virtue in remanding to the trial court to examine an enactment we are equally capable of interpreting. Illinois Indep. Tel. Ass'n v. Commerce Comm'n, 539 NE2d 717, 722 (IllAppCt 1988) (citing Rios v. Jones, 348 NE2d 825, 828 (Ill 1976)); Haines Pipeline Const., Inc. v. MPC, 830 P2d 1230, 1238 (Mont 1991), overruled on other grounds, Porter v. Galarneau, 911 P2d 1143 (Mont 1996); State v. Board of Cty. Com'rs of Lyon Cty., 676 P2d 134, 139 (Kan 1984); Day v. Child Support Enforce. Div., 900 P2d 296, 300 (Mont 1995); Texas Cty. Irr. & Water Res. Ass'n v. Okl. Water Res. Bd., 803 P2d 1119, 1122 (Okl 1990). This principle applies whether the change was constitutional, judicial, or statutory. Thorpe v. Housing Auth. of the City of Durham, 393 US 268, 282, 89 SCt 518, 526, 21 LEd2d 474, 484 (1969). Because SDCL 47-21-2 was amended to remove restrictions on electric cooperatives competing with CATV providers in municipalities, the circuit court's declaratory and injunctive relief contravenes South Dakota law as amended, and, accordingly, is reversed.
2. Northern Electric's Membership in Northern Cable 
[Â¶8] Before its most current amendment, effective July 1, 1994, SDCL 47-21-68 stated:

A cooperative may become a member of other cooperatives, corporations or organizations engaged in the production or distribution of electricity or television business, and to own stock therein.
SDCL 47-21-68 (1989) (retroactive to January 1, 1988 -- SL 1989, Â§3). We are unable to discern from the circuit court's Amended Order which version of the statute it relied on to resolve this issue. Nonetheless, we conclude from the record that Northern Electric became a member of Northern Cable on January 20, 1989, and that the version of SDCL 47-21-68 then in effect, authorized Northern Electric to do so.
[Â¶9] Article VIII of Northern Cable's Articles of Incorporation provides: "The cooperative will not commence business until consideration of the value of at least One Thousand Dollars ($1,000) has been received for the issuance of shares." Northern Electric's board minutes for January 20, 1989 show a resolution to purchase $5,000 worth of Northern Cable's stock and to pay a $100 membership fee. The date of this resolution determines the time Northern Electric officially became a member of Northern Cable. Before this date, Northern Cable was a paper entity, that according to its Articles, was unable to engage in or transact any business.
[Â¶10] Satellite Cable argues that Northern Cable was created on October 16, 1987 as evidenced by the date its Articles of Incorporation were filed with the South Dakota Secretary of State. Satellite further contends that the version of SDCL 47-21-68 in effect at that time did not authorize Northern Electric to become a member of Northern Cable.(fn2)  Our review of the record, however, verifies that Satellite failed to present this argument to the circuit court. Ordinarily, to raise an issue on appeal, a party must first present the question to the trial court and obtain a ruling. "This Court will not decide issues the trial court has not had the opportunity to rule upon." Klinker v. Beach, 1996 SD 56, Â¶17 n3, 547 NW2d 572, 576 n3; Knudson v. Hess, 1996 SD 137, Â¶8, 556 NW2d 73, 75; Hawkins v. Peterson, 474 NW2d 90, 95 (SD 1991). Under our well-established precedent, Satellite has waived this argument.
3. Northern Cable's CATV Service to Pierpont 
[Â¶11] A. Northern Electric Acting Through Northern Cable. The circuit court ruled that Northern Electric could not bypass the prohibitions on electric cooperatives imposed in the earlier version of SDCL 47-21-2 by acting through its wholly owned subsidiary, Northern Cable. Northern Electric maintains that SDCL 47-21-68, as it existed before July 1, 1994, allowed an electric cooperative to join another cooperative to provide television services. Insofar as these two statutes may have conflicted, we resolve the conflict by holding that Northern Electric could not offer such service under the former statutory scheme by merely creating another cooperative singly consisting of its own subsidiary. To hold otherwise would make pointless the statutory prohibition on electric cooperatives imposed by the former version of SDCL 47-21-2.
[Â¶12] We need not decide whether the "mere instrumentality" exception to the rule of corporate separateness applies to the relationship between Northern Electric and Northern Cable because there was ample evidence in the record to simply establish that an agency relationship existed between parent and subsidiary. Glanzer v. St. Joseph Indian Sch., 438 NW2d 204, 207 (SD 1989). A parent corporation may be held accountable for the conduct of its subsidiary when an agency relationship exists between them. Id.; United States v. Reading Co., 253 US 26, 62-63, 40 SCt 425, 434, 64 LEd 760 (1920) (where subsidiary is the mere agent of parent, separate corporate existence of subsidiary may be ignored); A.G. Nelson v. Int'l Paint Co., Inc., 734 F2d 1084, 1092 (5thCir 1984); Weisser v. Mursam Shoe Corp., 127 F2d 344, 348 (2dCir 1942); Kissum v. Humana, Inc., 479 SE2d 751, 752 (Ga 1997); J.A. Bryant, Annotation, Liability of Corporation for Contract of Subsidiary, 38 ALR3d 1102, 1116, Â§4 (1971 & 1997 Supp) (collecting cases). Whether an agency relationship exists is a question of law to be assessed by the interaction of the companies as shown by their agreements or conduct. Kasselder v. Kapperman, 316 NW2d 628, 630 (SD 1982); Elvalsons v. Industrial Covers, Inc., 525 P2d 105, 111 (Or 1974). Liability under this principle may be established on the following elements: (1) the principal's indication that the agent is acting for the principal; (2) the agent's acceptance of the undertaking; and (3) an understanding between them that the principal controls the undertaking. Glanzer, 438 NW2d at 207-08; Southard v. Hansen, 376 NW2d 56, 58 (SD 1985); Kasselder, 316 NW2d at 630; J.R. Watkins Co. v. Dutt, 84 SD 453, 457, 173 NW2d 41, 43 (1969).
[Â¶13] Northern Cable was created to further Northern Electric's growth and development and specifically to venture into the television subscription business. Dennis Hagny, the general manager of both entities, testified by deposition that it is the role of a rural electric company to expand the services offered to those in rural communities. The companies shared the same board of directors and the same management. Hagny controlled the day-to-day management and operations of both Northern Electric and Northern Cable. We recognize that the mere fact that one corporation owns all or a majority of the stock of another, or that two corporations have common officers or directors, will not render a parent automatically answerable for acts of its subsidiary. But here, after having reviewed the undisputed evidence and the statutory scheme existing at the time, we are convinced that Northern Electric could not circumvent our Legislature's restriction on electric cooperatives under the former SDCL 47-21-2 by acting through its wholly owned subsidiary.(fn3) 
[Â¶14] B. Electric Cooperatives Prohibited From Offering CATV. As we stated, the 1997 amendment to SDCL 47-21-2 made the circuit court's declaratory and injunctive relief unsustainable. On damages, however, the question remains whether Northern Electric, acting through Northern Cable, financially damaged Satellite Cable by providing CATV service to Pierpont in violation of the prior version of SDCL 47-21-2. Satellite Cable asserts that this statute prohibited a rural electric cooperative from offering any type of subscription television service, whatever the technology used, in municipalities already served by an operating CATV system. Northern Electric declares that it had an MMDS system or a "hybrid" system, neither of which were prohibited by the statute. However, the proposed ordinance Northern Cable requested the Pierpont Trustees to pass, permitted Northern Cable to provide and charge subscribers for "CATV" services. No one disputes that Northern Cable received a "CATV" franchise in Pierpont. Throughout its corporate minutes, there are references to a plan for establishing a CATV system there. For these reasons, we think Northern Cable should now be foreclosed from asserting it was not offering a CATV system. Did the statute also prohibit an MMDS system as Satellite contends?
[Â¶15] An interpretive guide courts use to decipher uncertain statutory language is the last antecedent rule: A limiting clause remains confined to the last antecedent, unless the context or obvious purpose requires a different interpretation. In re Tax Appeal of Black Hills Legal Services, Inc., 1997 SD 64, Â¶8, 563 NW2d 429, 431; Nat'l Farmers Union P. & Cas. Co. v. Universal Underwriters Ins. Co., 534 NW2d 63, 65 (SD 1995); Rogers v. Allied Mut. Ins. Co., 520 NW2d 614, 617 (SD 1994) (citing Kaberna v. School Bd. of Lead-Deadwood Sch. Dist. 40-1, 438 NW2d 542, 543 (SD 1989)); Lewis v. Annie Creek Min. Co., 74 SD 26, 33, 48 NW2d 815, 819 (1951). The limiting clause in SDCL 47-21-2, "in any municipality which does not have an operating CATV system," follows the phrase "and may provide programming to customers via a CATV system, as defined in Â§9-35-16 ... ." From the positioning of these latter word groups, and the statute's second use of "may provide" after the earlier and separate reference to MMDS systems, we conclude the legislative intent was to limit competition in municipalities between CATV providers only. Northern Electric was thus prohibited from offering CATV services in Pierpont because an operating system was already present there. On the other hand, the former statute did not prohibit Northern Cable from providing an MMDS system.
CONCLUSION 
[Â¶16] We reverse the declaratory and injunctive relief as SDCL 47-21-2 was amended effective July 1, 1994 to lift restrictions on electric cooperatives offering CATV to municipalities. Further, the version of SDCL 47-21-68 in effect at the time Northern Cable began operations allowed Northern Electric to become a member of Northern Cable. Nonetheless, because the former version of SDCL 47-21-2 forbade Northern Electric from providing CATV service to Pierpont, it could not avoid the statutory restriction by acting through its wholly owned subsidiary, Northern Cable. To the extent Northern Cable was providing CATV service to Pierpont residents during the time the former version of SDCL 47-21-2 proscribed such service, Satellite is entitled to seek damages for interference with its exclusive franchise.
[Â¶17] Affirmed in part and reversed in part.
[Â¶18] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.
Footnotes
1.  CATV system "means a system of coaxial cables or other electrical conductors and equipment used or to be used primarily to receive television or radio signals directly or indirectly off-the-air and transmit them to subscribers for a fee." SDCL 9-35-16. 
2.  SDCL 47-21-68 provided at that time:

A co-operative shall have power to become a member of other cooperatives or corporations engaged in the production or distribution of electricity or to own stock therein. 
3.  Northern Electric argues that the restrictions on cooperatives embodied in the statutes under review here violated free speech and equal protection rights under the United States Constitution or were preempted under the Cable Act, 47 USC Â§521 et seq. We find these arguments to be without merit or waived for failure to cite direct supporting authority in violation of SDCL 15-26A-60(6). Zens v. Chicago, Milwaukee, St. Paul & Pac. R. Co., 479 NW2d 155, 159 (SD 1991).