*1999 SD 141*

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Michael J. ROBINSON, Defendant and Appellant.**

No. 20737.

Supreme Court of South Dakota.

Argued Sept. 14, 1999.

Decided Nov. 3, 1999.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, for plaintiff and appellee.

David A. Pfeifle of May, Johnson, Doyle & Becker, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] In this case, the jury was instructed that passing a check against insufficient funds created the presumption that the passer knew there were not sufficient funds in the account. The jurors were never told, however, that they need not accept the presumption, but if they did, that the passer's knowledge still had to be proved beyond a reasonable doubt considering all the evidence. Thus, the instruction improperly shifted the burden of proof to the defendant. We affirm in part, reverse in part, and remand for a new trial.

### Background

[¶ 2.] Michael Robinson managed I–29 Antique Exchange in Tea, South Dakota. The Exchange rents booth space to individual vendors, who display for sale their wares and handicrafts. Under a three-year "lease," Robinson and Milton Kosel, the owner of the property, agreed that Robinson would manage the business and pay Kosel a monthly fee of $2,750.

[¶ 3.] Robinson kept track of the items sold for each vendor. Sales were recorded on cash register tapes and posted to a vendor sheet with each vendor's assigned number. All sale funds were deposited to the Exchange's bank account. Vendors were paid in accord with the money collected for them, less rent. On the second or third of each month, vendors received payment by check drawn on the Exchange account, signed by Robinson.

[¶ 4.] From October 1995 to April 1997, this arrangement proceeded without incident. In April 1997, however, First Premier Bank dishonored several checks issued for the March 1997 sales. After their checks were returned, vendors were back on April 3, "screaming and hollering ... and having a fit about these bad checks ...." Alan Ljunggren, the clerk on duty, locked the door and contacted Robinson. Robinson told Ljunggren that "he was getting the money together," and later told Ljunggren not to come to work on April 4th. Kosel quickly called a meeting. He released Robinson as manager and replaced him with Ljunggren.

[¶ 5.] On August 29, 1997, Robinson was charged by complaint with fourteen counts of insufficient funds checks. Less than six weeks later, on October 6, 1997, the Lincoln County Grand Jury indicted him on the same fourteen counts. The State moved to "join" the complaint file with the indictment file, and the motion was granted. Robinson sought to dismiss, contending that the six-month statute of limitations had expired before the indictment was handed down. The circuit court denied the motion.

[¶ 6.] In the jury trial, Ljunggren testified that Robinson disclosed to him on March 21, 1997, that "[t]here was twenty thousand ... dollars in sales, and that money, he didn't have that money." Rob-

inson was found guilty of eleven counts of insufficient funds checks, in violation of SDCL 22-41-1. He was sentenced to prison for two years on counts one, two, and three, to be served consecutively, with the sentence for count three suspended on condition that restitution be made. For the remaining counts, he was fined and sentenced to one year in the county jail, the sentences to run consecutively but concurrently to the penitentiary time, and suspended on payment of restitution.

[¶ 7.] Trial counsel did not appeal.[1] Robinson filed a pro se motion for writ of habeas corpus. The court then appointed an attorney to assist him. By stipulation the habeas petition was withdrawn so that an order to vacate sentence could be obtained. Circuit Judge Kathleen Caldwell dismissed the habeas petition and ordered the sentence vacated. The trial court then reentered the same sentence pronounced earlier, thereby restoring Robinson's right to appeal.

[¶ 8.] Robinson now asserts that (1) the trial court erred by denying his motion to dismiss based on the six-month statute of limitations for bad check offenses; (2) there was insufficient evidence to sustain a finding of guilt beyond a reasonable doubt; (3) there was insufficient evidence regarding Robinson's individual culpability for writing checks on a corporate account; (4) the jury committed misconduct during deliberations; and (5) the trial court erred in instructing the jury on the presumption that passing a check was prima facie evidence of knowledge of insufficient funds in the account upon which it was drawn. As we reverse on issue five, we need not reach issues two, three and four.[2]

### Analysis and Decision

[¶ 9.] "Statutory interpretation presents a question of law." *Satellite Cable Serv. v. Northern Elec. Coop., Inc.*, 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480. "The construction of [a] statute and its application to [the] facts present questions of law, which we review de novo." *State v. Springer-Ertl*, 1997 SD 128, ¶ 4, 570 N.W.2d 39, 40. A trial court's findings of fact are to be reviewed under the clearly erroneous standard. *State v. Karlen*, 1999 SD 12, ¶ 6, 589 N.W.2d 594, 597; *State v. Westerfield*, 1997 SD 100, ¶ 8, 567 N.W.2d 863, 866.

### A.

### Limitations Period: Beginning with Complaint — Converting to Indictment

[¶ 10.] The complaint against Robinson of August 29, 1997, charging fourteen counts of passing checks against insufficient funds, was filed less than six months after he received the notices of dishonor. Later, the prosecutor chose to take the matter to a grand jury. An indictment, with the same fourteen counts, was handed down on October 6, 1997, more than six months after the notices of dishonor.

> A criminal prosecution under § 22-41-1 or 22-41-1.2 must be commenced within six months after the holder of a check receives notice of its dishonor. Failure to prosecute a complaint within six months shall be a bar to any criminal action under those sections.

SDCL 22-41-3.4. Robinson contends the case was not timely because a complaint is insufficient to commence a criminal action under § 22-41-1 or 22-41-1.2. The matter must be commenced by information or indictment, Robinson argues, because SDCL 23A-6-1 states that "[e]very public offense must be prosecuted by an indictment or an information...."

[¶ 11.] Although it is not specific to bad check cases, SDCL 23A-42-4 generally defines commencement of criminal prosecutions. It states that the action "shall be deemed commenced by the filing of a complaint, information or indictment with any committing magistrate or clerk of any

---

1. Appellate counsel was not trial counsel.

2. Issue one is discussed in Part A. and issue five in Part B.

court having jurisdiction of the offense." Because the statute of limitations for bad check prosecutions provides no other definition for commencement, we apply this general provision. Therefore, the complaint properly commenced the case and the prosecution was timely.

## B.

### Bad Check as Prima Facie Evidence of Knowledge of Insufficient Funds

■ [¶ 12.] Essential to the crime of passing a check on insufficient funds is proof that the passer knew at the time that there were not sufficient funds in the account to allow for full payment of the check. This, and intent to defraud the person to whom the check was delivered, must be proved beyond a reasonable doubt. SDCL 22–41–1. Quoting verbatim from SDCL 22–41–2, the court told the jury in instruction seventeen: "The passing of a check as prohibited by the statute is prima facie evidence that the person who passed it had knowledge of insufficient funds in the account on which the check was drawn in the financial institution."

3. Before closing arguments, the judge found that the requirements of SDCL 19–11–3 (Rule 302(b)) had been met. That rule provides:
The court is not authorized to direct the jury to find a presumed fact against the accused. If a presumed fact establishes guilt or is an element of the offense or negatives a defense, the court may submit the question of guilt or of the existence of the presumed fact to the jury, but only if a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt. If the presumed fact has a lesser effect, the question of its existence may be submitted to the jury provided the basic facts are supported by substantial evidence or are otherwise established, unless the court determines that a reasonable juror on the evidence as a whole could not find the existence of the presumed fact.

4. The current pattern jury instruction on presumptions concerning insufficient funds checks is as follows:

[¶ 13.] The problem here arises from instruction eighteen: "Prima Facie evidence is defined as evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence." Presumptions against criminal defendants, whether "recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by §§ 19–11–3 and 19–11–4." [3] SDCL 19–11–2. As a safeguard to caution juries from misapplying the burden of proof,

Whenever the existence of a presumed fact against the accused is submitted to the jury, the court *shall* instruct the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.

SDCL 19–11–4 (Rule 302(c)) (emphasis added). Neither of the two mandated protections set out in § 19–11–4 appears in instruction eighteen.[4] The instruction

If the evidence reveals an insufficient funds check was passed, it may be presumed that the defendant had knowledge of insufficient funds in the account on which the check was drawn in the financial institution.
If the evidence reveals a check was passed and this check bears the name and address of an account holder and bears a signature purporting to be that of the account holder, it may be presumed that an account holder executed the check.
These presumptions are not conclusive, and may be considered in connection with all other evidence submitted in the case, in determining the guilt or innocence of the defendant.
If you find beyond a reasonable doubt that a check was passed which bears the name and address of an account holder and which bears a signature purporting to be that of an account holder, you may find that this is sufficient evidence that the defendant executed the check and that the defendant had knowledge of insufficient funds in the

failed to tell the jury that it was not required to take the prima facie evidence as proof of knowledge, and because knowledge is an element in the offense, the instruction did not explain that the required knowledge must, on all the evidence, be proved beyond a reasonable doubt. *See State v. McDonald*, 421 N.W.2d 492 (S.D.1988) (failure to instruct jury in accord with this rule is reversible error).

■■■ [¶ 14.] Judges bear the duty to instruct the jury on the applicable law, especially when an instruction is statutorily mandated. *State v. Eagle Star*, 1996 SD 143, ¶ 15, 558 N.W.2d 70, 73. Here, nonetheless, the jury was given the general burden of proof instruction: "The state has the burden of proving every element of the offense charged beyond a reasonable doubt. Such burden of proof never shifts to the defendant, but rests upon the state throughout the trial." We consider jury instructions as a whole when we review asserted error in any part of the instructions. *State v. Traversie*, 387 N.W.2d 2, 8 (S.D.1986) (citation omitted).

■■ [¶ 15.] Is the general burden of proof instruction sufficient to satisfy the mandate in SDCL 19–11–4? We addressed this question in *McDonald, supra*. There, we stated:

> The reasoning behind the requirements of SDCL 19–11–3 and—4 is clear. When the prosecution submits basic facts to a jury in anticipation of being able to utilize those basic facts to gain the advantage of a statutory or common law presumption, the trial court must remind the jury of the burden of proof which the prosecution bears. If the jury is not instructed that it must still find guilt beyond a reasonable doubt, regardless of the presumptions, the danger

exists that the jury will give greater weight to the presumptions than it should.

*McDonald*, 421 N.W.2d at 496. Due process "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344, 352 (1985) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39, 48–51 (1979)). *See Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218, 221 (1989).

■■ [¶ 16.] The analysis to be used in examining presumptions in jury instructions is presented in *Franklin*:

> If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as whole.... This analysis "requires careful attention to the words actually spoken to the jury ..., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction."

471 U.S. at 315, 105 S.Ct. at 1971, 85 L.Ed.2d at 354 (citations omitted) (quoting *Sandstrom*, 442 U.S. at 514, 99 S.Ct. at 2454, 61 L.Ed.2d at 45). Accordingly, the question is whether reasonable jurors could have understood that the knowledge presumption shifted the burden of proof to Robinson on the element of knowledge upon proof of the predicate act. *See*

---

account on which the check was drawn in the financial institution, *but you are not required to so find. You must still find beyond a reasonable doubt that the defendant knowingly passed a check drawn in the financial institution, and had knowledge of*

*insufficient funds in the account upon which the check was drawn in the financial institution.*

South Dakota Pattern Jury Instruction, 3–12–5 (Revised 12/1998) (emphasis added).

*Franklin*, 471 U.S. at 319, 105 S.Ct. at 1974, 85 L.Ed.2d at 356–57(citing *Sandstrom*, 442 U.S. at 518–19 n. 7, 99 S.Ct. at 2456, 61 L.Ed.2d at 47). We think the conclusion is unavoidable: Instruction eighteen improperly shifted the burden of proof to Robinson, thus relieving the State of proving an essential element on all the evidence beyond a reasonable doubt. We seriously doubt that the general burden instruction overcame the defect in instruction eighteen. Furthermore, to hold that it did would require us to ignore § 19–11–4 and established constitutional law. That being resolved, there is one other matter to consider.

[¶ 17.] Robinson did not object to the jury instructions given at trial. Thus, the plain error rule applies. We have previously set out the standard for considering plain error:

> Plain error requires (1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." We invoke our discretion under the plain error rule cautiously and only in "exceptional circumstances." Such circumstances may include cases in which "'a miscarriage of justice would otherwise result,'" i.e., a defendant is actually innocent. But our discretion is not confined to cases of actual innocence because error may "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings" tangential to questions of innocence. When considering any error, we examine all the circumstances:

> > In reviewing criminal cases, it is particularly important for appellate courts to relive the whole trial imaginatively, and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution.

*State v. Nelson*, 1998 SD 124, ¶ 8, 587 N.W.2d 439, 443 (alterations in original) (internal citations omitted). Considering all the circumstances, we invoke our discretion to conclude that this was reversible plain error "seriously affect[ing] the fairness, integrity, or public reputation" of this judicial proceeding. *Id.* Two weeks before the checks were issued, Robinson told his coworker that he feared the account did not have sufficient funds in it. But Robinson's knowledge of what was in the account at the time he wrote the checks and his intent in passing those checks were critical issues in the trial. The record is silent on what caused the account to be inadequate to cover the checks. That some checks were labeled "uncollectable" as opposed to "insufficient" only adds to the uncertainty. Indeed, the bank statements show that there were sufficient funds in the account to cover them.

[¶ 18.] Affirmed in part, reversed in part, and remanded for a new trial.

[¶ 19.] MILLER, Chief Justice, and AMUNDSON and GILBERTSON, Justices, concur.

[¶ 20.] SABERS, Justice, concurs in result in part and concurs in part.

[¶ 21.] SABERS, Justice (concurring in result in part and concurring in part).

[¶ 22.] I concur in result in Issue A and concur in Issue B.