#23477, #23478-a-DG

**2006 SD 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,  Plaintiff and Appellee,

 v.

DAVID ASMUSSEN,  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE ROBERT L. TIMM
Judge

* * * *

LAWRENCE E. LONG
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota  Attorneys for plaintiff
 and appellee.


MICHAEL B. THOMPSON
Sioux Falls, South Dakota  Attorney for defendant
 and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2006

OPINION FILED **04/12/06**

GILBERTSON, Chief Justice

[¶1.]    David J. Asmussen (Asmussen), appeals from a conviction for stalking. We affirm.

## FACTS AND PROCEDURE

[¶2.]    Asmussen and Pamela Dunn (Dunn), were involved in a long-term romantic relationship that ended sometime in August 2000. On August 25, 2000, in Codington County, South Dakota, circuit court, a protection order against further domestic abuse was issued against Asmussen as provided under SDCL Chapter 25-10. The protection order prohibited Asmussen from "contact[ing], directly or indirectly, in any manner" Dunn, her daughter, Dunn's mother, any other member of Dunn's family, Dunn's employer or her co-workers. The protection order was in effect until August 25, 2003. It also prohibited Asmussen from coming within 100 feet of any vehicle owned by Dunn. The protection order was served on Asmussen, and stated at the top of the first page: "VIOLATION OF THIS PROTECTION ORDER IS A CRIMINAL OFFENSE."

[¶3.]    On December 9, 2001, at approximately 8:00 p.m., Dunn's daughter, Stacey Benson, telephoned Dunn asking if she had a telephone number for an acquaintance. Dunn replied that she did not, but that Asmussen would know it. Dunn then had a conversation with Asmussen in the background. Dunn explained to Benson that Asmussen was retrieving the last of his personal possessions from Dunn's home. At approximately 11:00 p.m. that same evening, Dunn telephoned her mother, Loretta Hallquist, and stated she had received a telephone call from Asmussen in which he sounded upset and possibly like he was crying.

[¶4.]    Dunn was scheduled to work on December 10, 2001.  However, she never arrived at her place of employment, nor has she ever been heard from since her last contact with her mother on December 9, 2001.  An investigation was begun into her disappearance by the Watertown, South Dakota, police department.

[¶5.]    In the course of the investigation concerning Dunn's disappearance, Asmussen admitted being at Dunn's residence and to speaking with her by telephone on December 8 and 9, 2001.  Telephone records revealed that Asmussen had initiated seventeen calls to Dunn's home telephone between the dates of November 25, 2001, and December 9, 2001, all in violation of the protection order.  Three threatening and abusive messages left by a male who did not identify himself were recovered from Dunn's digital voice messaging system, which indicated that the messages had been listened to and saved prior to Dunn's disappearance.

[¶6.]    As a result of the violation of the protection order, Asmussen was charged with three counts of stalking.  The first count was charged under SDCL 22-19A-1, SDCL 22-19A-2[1] and 22-6-1(8), and was based on the alleged violation of the protection order.  The second count of stalking was charged under SDCL 22-19A-

---

1.    SDCL 22-19A-2 provides:  "Any person who violates § 22-19A-1 when there is a temporary restraining order, or an injunction, or a protection order, in effect prohibiting the behavior described in § 22-19A-1 against the same party, is guilty of a Class 6 felony."

   A Class 6 felony can result in a maximum of "two years imprisonment in the state penitentiary or a fine of two thousand dollars, or both."  SDCL 22-6-1(8).

1(3) and 22-6-2(1).[2]  The third count was charged under SDCL 22-19A-1(2) and 22-6-2(1), but was eventually merged with the first count.  A Part II habitual offender information was also filed, alleging Asmussen had prior felony convictions for odometer rollback, conspiracy to commit odometer rollback, and mail fraud in United States District Court, District of South Dakota.  The matter was scheduled for a jury trial.

[¶7.]        On August 20, 2004, at a motions hearing, Asmussen addressed the court and indicated his desire to discharge his attorneys and represent himself at trial.  The circuit court informed Asmussen of the perils of self-representation, and Asmussen maintained he still wanted to represent himself.  After his attorneys were permitted to withdraw, Asmussen launched into irrelevant statements concerning the Uniform Commercial Code and requested that papers concerning the statements be filed with the circuit court.

[¶8.]        On August 23, 2004, a jury trial was held in Huron, South Dakota.  At trial, portions of the telephone messages left on Dunn's digital answering service on December 5 and 6, 2001, by a caller identified by the State as Asmussen were played for the jury.  A videotape of Asmussen's interview with police was also admitted at trial and played for the jury, in which he admitted to knowing that the protection order had been issued against him.  Jon Bierne, an Agent with the

---

2.     The second count was dismissed on a motion to the circuit court, which held that SDCL 22-19A-1 was unconstitutionally overbroad on its face in violation of the First Amendment, and was unconstitutionally vague in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  State v. Asmussen, 2003 SD 102, ¶1, 668 NW2d 725, 728.  On intermediate appeal to this Court, we reversed the circuit court on both issues.  *Id*. ¶¶9, 18.

Division of Criminal Investigation (DCI), testified at trial that in his opinion the voice on the telephone messages was that of Asmussen.

[¶9.]     Asmussen made no opening statement at trial and did not object to any of the State's evidence at trial.  Asmussen also failed to participate in any in-chambers discussions, refused to propose jury instructions, made no objections to the State's proposed jury instructions, and declined to give a closing argument.  The following jury instruction was used at trial on Count 1 under SDCL 22-19A-2:

> The elements of the crime of stalking in violation of a protection order, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:
> 1. A protection order was in effect prohibiting the defendant from willfully, maliciously, and repeatedly harassing Pamela Dunn by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication;
> 2. The defendant had knowledge of the order; and
> 3. The defendant violated the order.

[¶10.]     Asmussen was found guilty on the two counts of stalking.  The circuit court sentenced him to forty months in the state penitentiary with credit for time served, and assessed attorneys' fees and costs.  Asmussen was advised of his right to appeal the conviction, and timely filed a pro se notice of appeal.  The circuit court appointed appellate counsel, who also timely filed a notice of appeal.  This Court entered an order consolidating the appeals upon a motion by appellate counsel.  Asmussen filed a letter with the Court asking for his appellate counsel to withdraw, which was remanded to circuit court for proceedings.  The circuit court denied the motion after a hearing on the matter.  Asmussen raises three issues for this Court's review:

-4-

1.    Whether Asmussen's conviction under SDCL 22-19A-2 violated his right to Due Process when the protection order issued under SDCL Chapter 25-10 failed to give notice that conduct in violation of the order would subject Asmussen to the penalties for a Class 6 felony under SDCL 22-19A-2.

2.    Whether the circuit court adequately advised Asmussen of the perils of self-representation such that his constitutional rights to counsel were not infringed.

3.    Whether the circuit court erred when it allowed a law enforcement officer to offer his opinion in court that the voice on the messages left for Dunn was Asmussen's.

## STANDARD OF REVIEW

[¶11.]    Appeals asserting an infringement of a constitutional right are reviewed under the de novo standard of review.  State v. Dillon, 2001 SD 97, ¶12, 632 NW2d 37, 43 (citing State v. Stanga, 2000 SD 129, ¶8, 617 NW2d 486, 488).  A direct appeal from a conviction must be afforded greater scrutiny than a collateral challenge by habeas corpus action.  State v. Moeller, 511 NW2d 803, 809 (SD 1994).  Thus, on a direct appeal from a conviction the defendant is entitled to all presumptions and protections possible under our constitution.  *Id.*

[¶12.]    We also employ the de novo standard of review for issues of statutory construction.  State v. Myrl & Roy's Paving, Inc., 2004 SD 98, ¶6, 686 NW2d 651, 653 (citing Zoss v. Schaefers, 1999 SD 105, ¶6, 598 NW2d 550, 552 (citing Satellite Cable Srvs. v. Northern Electric, 1998 SD 67, ¶5, 581 NW2d 478, 480)).  "Statutory construction is used to discover the true intention of the law which is ascertained primarily from the language expressed in the statute." *Id.* (quoting Martinmaas v. Engelmann, 2000 SD 85, ¶49, 612 NW2d 600, 611).  We give words their plain

meaning and effect and read statutes as a whole, as well as enactments relating to the same subject. *Id.* ¶6, 686 NW2d at 654.

[¶13.] The trial court's evidentiary rulings are presumed correct and will not be overturned absent an abuse of discretion. State v. Perovich, 2001 SD 96, ¶11, 632 NW2d 12, 15 (citing State v. Goodroad, 1997 SD 46, ¶9, 563 NW2d 126, 129). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." State v. Henry, 1996 SD 108, ¶10, 554 NW2d 472, 473 (quoting *In re* A.R.P., 519 NW2d 56, 62 (SD 1994) (quoting State v. Moriarty, 501 NW2d 352, 355 (SD 1993); State v. Devall, 489 NW2d 371, 374 (SD 1992))). "In applying the abuse of discretion standard, 'we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision.'" State v. Wilkins, 536 NW2d 97, 99 (SD 1995) (citing State v. Almond, 511 NW2d 572, 574 (SD 1994) (citing State v. Pfaff, 456 NW2d 558, 560-61 (SD 1990); State v. Bartlett, 411 NW2d 411, 414 (SD 1987); Peterson v. Peterson, 434 NW2d 732 (SD 1989))). With regard to the rules of evidence, abuse of discretion occurs when a trial court misapplies a rule of evidence, not when it merely allows or refuses questionable evidence. State v. Guthrie, 2001 SD 61, ¶30, 627 NW2d 401, 415 (citing Koon v. United States, 518 US 81, 100, 116 SCt 2035, 2047, 135 LEd2d 392 (1996)).

## ANALYSIS AND DECISION

[¶14.]     1.     **Whether Asmussen's conviction under SDCL 22-19A-2 violated his right to Due Process when the protection order issued under SDCL Chapter 25-10 failed to give notice that conduct in violation of the order would subject Asmussen to the penalties for a Class 6 felony under SDCL 22-19A-2.**

[¶15.]     Asmussen argues that his Due Process rights were violated as the protection order issued against him under SDCL Chapter 25-10 did not give notice that a violation of the order could subject him to penalties under SDCL 22-19A-2 for a Class 6 felony. Asmussen argues that in order to safeguard an individual's due process rights, a person must be advised of the consequences of his or her failure to abide by an order of protection. In the instant case, Asmussen contends the protection order had to state with specificity that it could be violated and result in a conviction for a Class 6 felony if Asmussen engaged in conduct that met the definition of stalking under SDCL 22-19A-1(3). Asmussen also argues that SDCL 22-19A-1 is applicable only to protection orders issued pursuant to SDCL Chapter 22-19A.

[¶16.]     SDCL 22-19A-2 provides: "Any person who violates § 22-19A-1 when there is a temporary restraining order, or an injunction, or a protection order, in effect prohibiting the behavior described in § 22-19A-1 against the same party, is guilty of a Class 6 felony." The specific behavior proscribed in SDCL 22-19A-1 is:

> Any person:
> (1)     Who willfully, maliciously, and repeatedly follows or harasses another person;
> (2)     Who makes a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury; or

> (3)     Who willfully, maliciously, and repeatedly harasses
> another person by means of any verbal, electronic, digital
> media, mechanical, telegraphic, or written
> communication; is guilty of the crime of stalking.
> Stalking is a Class 1 misdemeanor.

[¶17.]     Under the Fourteenth Amendment to the United States Constitution, and article VI, section 2 of the South Dakota Constitution, no person shall be deprived "of life, liberty, or property without due process of the law." Due process in the context of a criminal statute requires application of the standard as set forth in *State v. Bad Heart Bull*:

> A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. Bouie v. City of Columbia, 378 US 347, 84 SCt 1695, 12 LEd2d 894 [(1964)]. A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. United States v. Harriss, 347 US 612, 74 SCt 808, 98 LEd 989 [(1954);] State v. Bullis, 231 NW2d 851 (SD 1975)).

257 NW2d 715, 720 (SD 1977). However, notice in the context of due process and criminal statutes does not require "an explicit or personalized warning." United States v. Arcadipane, 41 F3d 1, 5 (1stCir 1994). This is because the law is definite and knowable, and under our system of criminal law every person is presumed to know the law. Cheek v. United States, 498 US 192, 199, 111 SCt 604, 609, 112 LEd2d 617 (1991) (noting that the common-law rule that "presumed every person knew the law," has been applied numerous times to cases construing criminal statutes by the United States Supreme Court) (citing Hamling v. United States, 418 US 87, 119-124, 94 SCt 2887, 2909-2911, 41 LEd2d 590 (1974); United States v.

International Minerals & Chemical Corp., 402 US 558, 91 SCt 1697, 29 LEd2d 178 (1971); Boyce Motor Lines, Inc. v. United States, 342 US 337, 72 SCt 329, 96 LEd 367 (1952)).

[¶18.] Furthermore, this Court has long recognized that "when an action violates two criminal statutes, the government may prosecute under either, providing it does not discriminate against any class of defendants." State v. Big Head, 363 NW2d 556, 561 (SD 1985) (citing State v. Secrest, 331 NW2d 580, 583-84 (SD 1983)). As the United States Supreme Court noted in *United States v. Batchelder*:

> The provisions in issue here, however, unambiguously specify the activity proscribed and the penalties available upon conviction. *See supra*, at 2201-2202. That this particular conduct may violate both Titles does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

442 US 114, 123, 99 SCt 2198, 2204, 60 LEd2d 755 (1979).

[¶19.] In the instant case, Asmussen was given notice by the language contained in the protection order that it was a criminal offense to violate the order by contacting Dunn *in any manner*. The conduct that Asmussen was notified would constitute a violation of the protection order and a criminal offense included: "The Respondent shall be restrained from committing any acts resulting in physical harm, bodily injury or attempting to cause physical harm or bodily injury, or from inflicting fear of imminent physical harm of bodily injury against family or

household members." In addition, the order stated "Respondent shall not contact, *directly or indirectly, in any manner*: petitioner, Stacey Benson, any other member of petitioner's family, petitioner's mother, or petitioner's employer, or petitioner's co-employees." (emphasis added). The protection order was clear on its face that any and all contact by Asmussen was a violation of the order and a criminal offense.

[¶20.]   Violation of a protection order issued under SDCL Chapter 25-10 can warrant misdemeanor or felony charges depending on the circumstances involved.[3] In addition, the statute indicates that "[a]ny proceeding under this chapter is in addition to other civil or criminal remedies." SDCL 25-10-13.

[¶21.]   SDCL 22-19A-2 provides an additional criminal remedy for violation of a protection order when the conduct involved in violating the order meets the elements of stalking. The language employed in SDCL 22-19A-1 gives fair notice of the stalking conduct that is forbidden when a protective order is in place. SDCL 22-19A-2 gives fair notice that engaging in the conduct described in SDCL 22-19A-1 while a protection order is in place results in a Class 6 felony.

---

3.    SDCL 25-10-13 provides:

Violation of order as misdemeanor or felony. If a temporary protection order or a protection order is granted pursuant to this chapter, and the respondent or person to be restrained knows of the order, violation of the order is a Class 1 misdemeanor. If any violation of this section constitutes an assault pursuant to § 22-18-1.1, the violation is a Class 6 felony. If a respondent or person to be restrained has been convicted of, or entered a plea of guilty to, two or more violations of this section, the factual basis for which occurred after the date of the second conviction, and occurred within five years of committing the current offense, the respondent or person to be restrained is guilty of a Class 6 felony for any third or subsequent offense. Any proceeding under this chapter is in addition to other civil or criminal remedies.

[¶22.] Furthermore, the language of SDCL 22-19A-2 does not limit its application to protection orders issued pursuant to SDCL Chapter 22-19A. The language used in the statute indicates only that "a protection order" has to be in place. The statutes are sufficient to give notice to any "person of ordinary intelligence," that violation of any protection order by conduct that meets the definition of stalking in SDCL 22-19A-1 can be charged and prosecuted as a Class 6 felony per SDCL 22-19A-2.

[¶23.] The State presented evidence at trial that Asmussen repeatedly contacted Dunn by telephone over a twelve hour time period on December 5 and 6, 2001. Twenty-six calls were placed from a cellular telephone owned by Asmussen's father and to which Asmussen had access. The State also presented evidence that Asmussen left at least three voice mail messages on Dunn's digital answering service that contained foul language, berated her for lying to Asmussen, threatened he was writing a letter to Dunn's father, and threatened that there would be "some bad consequences" if she lied to him about who she had been with the evening of December 5, 2001. Finally, testimony from a co-worker concerning a telephone call Dunn received on December 6, 2001, while at work supported the State's position that Asmussen's course of conduct had the effect of harassing Dunn. The co-worker testified that Dunn was visibly upset, shaking and crying after receiving the telephone call and was in fear of what Asmussen would do after finding out she had begun seeing another man.

[¶24.] It is clear from the facts of the case that Asmussen was on notice by his acknowledged receipt of the protection order that he was forbidden to contact Dunn

in any manner. Yet, despite the prohibition, Asmussen repeatedly contacted Dunn by telephone and berated and threatened her for dating another man. The course of conduct Asmussen engaged in violated the protection order and met the definition of stalking as provided in SDCL 22-19A-1(3).

[¶25.] Finally, Asmussen argues that during the settlement of instructions the State's Attorney argued that the State was required to prove only that Asmussen violated an effective protection order by contacting Dunn and not that the effective protection order had to *textually forbid* the specific conduct proscribed in SDCL 22-19A-1(3). Asmussen argues that the circuit court overruled the State's Attorney and ruled that the protection order had to *textually forbid* the specific conduct in SDCL 22-19A-1(3).

[¶26.] This is a mischaracterization of the State's Attorney's position and the circuit court's ruling. The State's Attorney argued that the protection order did not need to prohibit the conduct as listed in SDCL 22-19A-1(3). The circuit court overruled his objection to the inclusion of the language "prohibiting the defendant from willfully, maliciously, and repeatedly harassing Pamela Dunn by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication" in the jury instructions. The circuit court explained that the State had to prove that the protection order prohibited Asmussen from engaging in stalking behavior as defined in SDCL 22-19A-1. However, the circuit court did not rule that the protection order had to use the same language as SDCL 22-19A-1(3) as asserted by Asmussen. Instead, the circuit court ruled that the State's Attorney had to show that Asmussen was forbidden by the protection order from engaging in

the conduct prohibited in SDCL 22-19A-1(3), that is harassing by means of willful, repeated and maliciously contacting the victim "by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication[.]"

[¶27.]    The State's Attorney presented evidence at trial to show Asmussen had engaged in a course of conduct whereby he willfully, repeatedly, and maliciously contacted Dunn by telephone over the course of twelve hours on December 5 and 6, 2001. The circuit court did not err when it permitted the issue to go to the jury, as there was sufficient evidence in the record to show that the repeated and threatening telephone calls violated the "no contact" protection order.

[¶28.]    **2.    Whether the circuit court adequately advised Asmussen of the perils of self-representation such that his constitutional right to counsel was not infringed.**

[¶29.]    Asmussen argues on appeal that the circuit court erred when it granted his motion to represent himself at trial, as the waiver was not knowingly and voluntarily made. Asmussen contends the trial court failed to carefully review each required advisements one by one and obtain his answer before proceeding to the next advisement. Asmussen argues the waiver was constitutionally deficient because the circuit court "rattled off the advisements and then at the very end asked [Asmussen] if he understood." Asmussen also argues the circuit court erred when it did not order a competency evaluation after it granted the motion and Asmussen made completely irrelevant remarks concerning the Uniform Commercial Code and refused to respond to the circuit court's questions.

[¶30.]    A defendant in a criminal proceeding has the constitutional right to represent himself and a constitutional right to representation by counsel. State v.

Van Sickle, 411 NW2d 665, 666 (SD 1987) (citing Faretta v. California, 422 US 806, 95 SCt 2525, 45 LEd2d 562 (1975)); State v. Thomlinson, 78 SD 235, 100 NW2d 121 (1960) (citing SD Const. art VI, §2)). In order for a defendant to exercise the right to self-representation and waive the right to representation by counsel, a voluntary, knowing and intelligent waiver must be made by the defendant. *Id.* (citing *Faretta*, 422 US 806, 95 SCt 2525, 45 LEd2d 562). We have previously stated that the preferred method of determining whether a waiver is voluntary, knowing and intelligent, is for the circuit court to review the five *Van Sickle* factors with the defendant. State v. Raymond, 1997 SD 59, ¶12, 563 NW2d 823, 826 (citing *Van Sickle*, 411 NW2d at 666-67 (quoting R. LaFave, Criminal Procedure §11.5 (1984))).

[¶31.] However, a waiver may be constitutionally acceptable when the circuit court fails to issue the *Van Sickle* warnings. *Id.* ¶14 (citing *Van Sickle*, 411 NW2d at 667). As long as there are circumstances present that indicate the circuit court was able to ascertain that the defendant was fully aware of the dangers of self-representation, a waiver will be constitutionally acceptable. *Id.* "The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Van Sickle*, 411 NW2d at 666 (quoting Johnson v. Zerbst, 304 US 458, 58 SCt 1019, 82 LEd 1461 (1938)). As the Supreme Court stated in *Faretta*:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel.

-14-

> McCann, 317 US [269,] 279, 63 SCt [236,] 242[, 87 LEd 268 (1942)].

422 US at 835, 95 SCt at 2541, 45 LEd2d 562.

[¶32.] The level of competency necessary for a valid waiver of the right to counsel is the same as the level of competency to stand trial. *Raymond*, 1997 SD 59, ¶17, 563 NW2d at 827. The defendant must have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and have a 'rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting Godinez v. Moran, 509 US 389, 396, 113 SCt 2680, 2685, 125 LEd2d 321 (1993)). "The competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* (quoting *Godinez*, 509 US at 399, 113 SCt at 2687, 125 LEd2d 321). We will not overturn a knowing, intelligent and voluntary waiver on appeal for constitutional deficiency merely because the defendant demonstrates a lack of legal skill and experience and as a consequence employs poor trial strategy. *See Id.* ¶14, 563 NW2d at 826.

[¶33.] In the instant case, the record is clear that the circuit court reviewed the five *Van Sickle* factors with Asmussen at the motions hearing on August 20, 2001. It is also clear that the circuit court did not pause between each of the five factors and ask Asmussen to indicate his understanding. However, the record shows that the circuit court explained in detail the perils of self-representation. The circuit court warned Asmussen several times of the disadvantages of attempting to represent himself without legal training. Asmussen was then asked if he understood the pitfalls of self-representation, to which Asmussen replied "yes."

The circuit court then asked, "[a]nd you are willing to go forward even though you may be at a disadvantage," to which Asmussen again replied "yes." The circuit court asked if Asmussen had discussed his decision with his attorney, to which Asmussen replied "yes." Finally, the circuit court asked: "This case has gone on for a long period of time, you understand the charges against you, you've represented that to me, and you've been through a jury trial before?" Asmussen responded in the affirmative once again.

[¶34.]    Asmussen's waiver of the right to counsel was made knowingly, voluntarily and intelligently. His trial strategy of quoting the Uniform Commercial Code and insisting that the trial had to proceed under the rules of common law is more appropriately characterized as evidence of lack of legal training. Asmussen's choice of legal strategy was irrelevant to the charges he faced, but is not an indicator of lack of mental competency to waive his right to counsel given the facts of this case.

[¶35.]    **3.    Whether the circuit court erred when it allowed a law enforcement officer to offer his opinion in court that the voice on the messages left for Dunn was Asmussen's.**

[¶36.]    Asmussen contends that the testimony of the DCI agent Bierne that in his opinion the voice on the telephone messages was that of Asmussen was improperly admitted. However, no objection was made to the testimony at trial. Therefore, the matter must be reviewed under the plain error doctrine.

[¶37.]    The plain error rule requires a finding of: "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it 'seriously affects the fairness, integrity, or public reputation

of judicial proceedings.'" *Dillon*, 2001 SD 97, ¶12, 632 NW2d at 43 (quoting State v. Robinson, 1999 SD 141, ¶17, 602 NW2d 730, 735). The defendant bears the burden of showing the error was prejudicial. State v. Talarico, 2003 SD 41, ¶30, 661 NW2d 11, 22 (citing State v. Dufault, 2001 SD 66, ¶8, 628 NW2d 755, 757). An error is prejudicial when "in all probability it produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." State v. Piper, 2006 SD 1, ¶18, 709 NW2d 783, 794 (citing State v. Lee, 1999 SD 81, ¶21, 599 NW2d 630, 634).

[¶38.]     Asmussen claims the testimony was prejudicial in that it was necessary for the State to show Asmussen engaged in a course of conduct. Asmussen argues that without Bierne's testimony the State would have been able to show that only one telephone call from Asmussen was received by Dunn rather than four telephone calls. Under Asmussen's theory, the State would not have been able to secure the conviction for stalking in violation of a protection order under SDCL 22-19A-2, as it lacked evidence to show a course of conduct. However, Asmussen does not make a claim that he is not guilty of violating SDCL 22-19A-2.

[¶39.]     Asmussen's argument must fail, as the jury could have arrived at the conclusion that the voice on Dunn's digital answering system was Asmussen's without Bierne's opinion. The jury was able to listen to Asmussen speak during the trial proceedings and on the videotape of the police interview. It was then able to compare the voice exemplars to the messages left on the answering machine. Bierne's testimony was not necessary for the determination that it was Asmussen

who left the messages on Dunn's digital voice message system. Because no allegation of manifest injustice has been advanced, there can be no prejudice.

[¶40.] Moreover, it is clear from the trial transcript that Bierne testified as a lay witness rather than an expert witness, in that the State's Attorney asked the following question: "Officer, did you use the discussion that you had with the defendant to determine if you recognized the voice on the tape messages," to which Bierne replied "yes." The next question posed was "And what was your conclusion when you compared the two tapes or the series of tapes," to which Bierne replied "Well, I felt it was him that left the voice mail messages."

[¶41.] Under SDCL 19-15-1, a lay witness may offer an opinion when testimony is based on the perception of the witness and the testimony is helpful to a clear understanding of the witness's testimony. Bierne testified that he had interviewed Asmussen and heard his voice at that time. Next, Bierne testified that he listened to the voice on the digital voice message system and recognized it as Asmussen's based on what he personally perceived during the police interview. Given that Bierne's lay witness opinion satisfies the requirements of SDCL 19-15-1, it was not error to admit the testimony at trial.

[¶42.] Affirmed.

[¶43.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.